MONAHAN, Appellant, vs. FAIRBANKS-MORSE MANUFACTUR-
ING COMPANY, Respondent.

*October 3—October 24, 1911.*

*Master and servant: Injury from defective machinery: Unguarded
set-screw on shafting: Questions for jury: Special verdict:
Construction: Changing answer: Contributory negligence.*

1. In an action for injuries to an employee engaged in oiling ma-
chinery in defendant's factory, alleged to have been caused by
defendant's failure to securely guard the shafting, the evidence
is *held* to warrant findings by the jury to the effect that a
wooden collar placed as a guard over a set-screw on the shaft-
ing did not securely guard it, but by reason of defects became
displaced before the accident; that defendant in the exercise of
ordinary care ought to have discovered and repaired the de-
fects before the injury; that the set-screw was so located as
to be dangerous to employees in the discharge of their duties;
that it caught plaintiff's clothing and drew him against the re-
volving shaft; and that defendant's negligent failure to guard
the set-screw proximately caused the plaintiff's injury.
2. The findings of the special verdict in such a case with respect
to negligence must be interpreted in the light of the allega-
tions of the complaint.
3. Evidence which, among other things, was conflicting as to
whether plaintiff had been instructed how to fill grease cups
upon a clutch pulley and had been told to avoid reaching over
the revolving shaft, and which tended to show that he did not
know of an exposed set-screw on the shaft, is *held* not to show
as matter of law that he was guilty of contributory negligence
in reaching over the shaft to fill a cup; and it was error, there-
fore, for the court to change the jury's finding that plaintiff
was not guilty of any want of ordinary care. *Muenchow v.
Theo. Zschetzsche & Son Co.* 113 Wis. 8, distinguished.
VINJE and MARSHALL, JJ., dissent.

APPEAL from a judgment of the circuit court for Rock
county: GEORGE GRIMM, Circuit Judge. *Reversed.*

This is an action for damages for personal injuries sus-
tained by the plaintiff through the alleged negligence of the
defendant.

On November 16, 1909, the time the injuries were received, the plaintiff was employed as an oiler by the defendant, a corporation engaged in the manufacture of engines and machinery of various kinds. As part of its plant the defendant has a wood pattern shop or room, across which, about twenty feet from the floor, running east and west, is a rapidly revolving line shaft, one and fifteen-sixteenths inches in diameter, with pulleys thereon for operating by belting the machines and machinery on the floor below. A planer standing about the middle of the room is operated from a clutch pulley upon the shaft. This pulley is twenty-eight inches in diameter, with a face six and five-eighths inches in width. A lever extending from the clutch pulley to the planer causes the clutch of the clutch pulley to grip or release the revolving shaft and put in operation or stop the planer. On the hub of the pulley, on the side opposite the clutch, are two grease cups, on opposite ends of a diameter of the hub. For the purpose of enabling a person to fill the grease cups with grease and to oil other parts of the shafting and machinery there has been erected, twenty-two inches north of and parallel to the line of the line shaft and about four and one-half feet below it, a platform or oiler's walk about one and one-half feet wide, with a railing on the side away from the line shaft. The clutch of the clutch pulley is on the east side of the pulley. To the west of this pulley and against the hub of it is an iron collar, fastened to the line shaft by a set-screw which projects about five eighths of an inch above the surface of the collar. This collar is to prevent the pulley from sliding along the line shaft to the west. This iron collar and the set-screw projecting from it were covered by a wooden safety collar six and one-fourth inches in diameter and of a width the same as that of the iron collar. Into the inner surface of the wooden collar had been cut a square hole for the projecting set-screw. This wooden collar was held together by a wire band fastened in a groove on its outer surface. A wood split pulley, with a face

of five inches and a diameter of fifteen inches, was located fifteen and one-half inches west of the inner edge of the hub of the shaft pulley. Between these two pulleys the shaft had no projection and was smooth. The grease cups on the hub of the clutch pulley were hollow shells about two inches in diameter. When the covers for the grease cups were screwed tight the grease in the cups was forced through the cups onto the shaft. The line shaft revolved about 300 times per minute, the top toward the north; the iron collar revolved with it, and the clutch pulley also when the clutch was engaged. A turning of the clutch pulley when it was not engaged with the shaft would cause the operation of the planer below.

At the time of the injury the plaintiff was fifty-six years old and was doing oiling and janitor work in the pattern room of the defendant. He was not a machinist, but had been employed by the defendant in another department for some five years. At the time he was injured he had been acting as oiler and janitor in the wood pattern shop for eight days, during the absence of another employee who was expected to return to the work. He was told by the superintendent what his duties would be, and two of the youths in the shop were sent at different times to show him where and how to oil and grease certain parts of the machinery.

Plaintiff was injured while upon the oiler's walk filling one of the grease cups upon the clutch pulley. The cups were in a position nearly horizontal, one pointing toward the plaintiff and the other away from him. He had completed the filling of the cup pointing toward him and had filled the other with grease and was screwing on the top when his injuries were received. In screwing on the top of the oil cup his arm was extended and his wrist was over the revolving collar next to the clutch pulley. He wore a new jumper jacket. He testified that the jacket was buttoned up tight and that it was dry; that the sleeve was without buttons upon it and had a hem at the wrist end. He states that he did not observe how he was

caught, but he felt something grip him on the right side and tighten him up, and that this is the last he remembers until he regained consciousness at the hospital to which he was taken. The workmen in the room heard the plaintiff cry out when he was caught upon the shaft between the two pulleys. They saw him hanging from the shaft with his back toward the shaft and toward the south, his face toward the floor, his right arm beneath the shaft and pressed into the space between spokes of the clutch pulley; all his clothes above the waist up to the neck and shoulders were ripped off from his body and wound tightly around the shaft, the greater part being on the shaft near the collar and set-screw; his body above the shoulders and across the neck was in contact with the shaft, and his clothes wound around the shaft were the only thing supporting him. The plaintiff was cut loose, and it was noticed that the wooden collar was off from the iron collar and set-screw, and with the wire around it intact and tight was hanging upon the shaft near the split pulley to the west of the clutch pulley.

The plaintiff testified that he noticed nothing unusual that morning in the appearance of the machinery near the point where he was filling the grease cups. The wooden collar which was over the iron collar has a piece broken out of the side which was toward the clutch pulley at the place where the parts join and where the hole is located, designed to receive the set-screw and serve as a guard against the revolving set-screw. There was evidence that at several different times before the accident the wooden safety collar had been off from the iron collar.

To sustain the plaintiff's theory that the plaintiff was drawn against the revolving shaft by the set-screw in the iron collar catching his jacket sleeve, there is evidence tending to show that the line shaft at the place of injury, except for the projecting set-screw, was smooth and greasy, and that a man dressed as was the plaintiff at the time of the accident would not get his clothing caught upon the bare shaft. There is also

evidence to the effect that when the plaintiff was hanging from the shaft his right arm was stripped of clothing, that this arm was severely injured, that his clothing was found bunched up near the clutch pulley, and that the clothes of a person might be caught by a set-screw, start to wind around a revolving shaft, and then break loose from the set-screw. There is also evidence that before the line shaft had been brought to a standstill the body of the plaintiff rose and sank as it might if the clothing were wound about the shaft alone, and that he did not revolve with the shaft as he would if he were held by the set-screw.

There is evidence supporting the claim that the plaintiff did his work that morning as he usually did it and that he did not notice anything different that morning from any other morning; that by turning the clutch pulley attached to the planer below the grease cups the grease cups could be brought between the oiler and the revolving shaft, and that the oiler could thus avoid putting his hand over the revolving shaft, the set-screw, and collars.

The jury returned a verdict finding that (1) the wooden collar was off from the iron collar so as to leave the set-screw unguarded at the time the plaintiff was injured; (2) that the defendant, in the exercise of ordinary care, should have known of the unguarded condition of the set-screw in time to have securely guarded it before the plaintiff was injured; (3) that the set-screw, when unguarded, was so located as to be dangerous to employees of the defendant, including the plaintiff, when engaged in the discharge of the duties of oiler, they exercising ordinary care; (4) that the plaintiff was first drawn against the revolving shaft by the set-screw catching in his clothing; (5) that a negligent failure to guard the set-screw was the proximate cause of the plaintiff's injuries; (6) that no failure on the plaintiff's part to exercise ordinary care for his own safety contributed in any degree to produce his injury; and (7) that $8,000 was a reasonable sum to compensate the plaintiff for his injuries.

The court refused the. motion of the defendant to change the answers to several of the questions of the verdict, but granted the defendant's motion that the plaintiff be found guilty of contributory negligence as matter of law.    The verdict was accordingly amended, and upon the verdict as so amended the court directed judgment in favor of the defendant.    This is an appeal from the judgment so entered.

For the appellant there were briefs by *Jeffris, Mouat, Oestreich & Avery,* and oral argument by *M. O. Mouat.*

For the respondent there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

SIEBECKER, J.    The court found the plaintiff guilty of contributory negligence as matter of law and upon that ground awarded judgment dismissing the complaint.    The contentions presented on this appeal involve consideration of the evidentiary facts bearing on the question of the special verdict, finding the defendant guilty of negligence in not securely guarding the set-screw on the revolving shaft, whether or not the plaintiff's clothing was caught therein and caused to wind on the revolving shaft, and whether the evidence shows affirmatively that the plaintiff was guilty of a want of ordinary care in performing his duties as oiler which proximately contributed to produce his injuries.

The jury found that the set-screw was unguarded at the time of the accident; that the defendant in the exercise of ordinary care should have known of its unguarded condition in time to have securely guarded it before the injury; that it was so located as to make its unguarded condition dangerous to employees exercising ordinary care while discharging their duties; that the plaintiff was drawn against the revolving shaft by the set-screw catching in his clothing; that the negligent failure to guard the set-screw proximately caused plaintiff's injuries; and that he was free from contributory negligence.    It is evident from the nature of the facts alleged that the defendant is charged with negligence in failing to comply

with the requirements of sec. 1636*j*, Stats. (1898), providing that the machinery therein specified, when "so located as to be dangerous to employees in the discharge of their duty, shall be securely guarded or fenced." It has been held that a set-screw attached to a revolving shaft like the one in question is a part thereof and within the contemplation of the provisions of this statute, and hence must be securely guarded when so located as to be dangerous to employees in the discharge of their duty. *Van de Bogart v. Marinette & M. P. Co.* 132 Wis. 367, 377 *et seq.*, 112 N. W. 443. The jury's verdict must be interpreted in the light of the allegation setting forth a cause of action arising out of a failure to perform the duties imposed by this statute. We cannot doubt that it establishes, in accordance with the charges of negligence in the complaint, that the defective wooden collar placed over the set-screw as a guard did not securely guard it, that it slipped off from the set-screw by reason of its defective condition just before the plaintiff's clothing was caught,—either because the plaintiff's wrist came into contact with it or without such contact,—and that the plaintiff's clothing was caught by the set-screw, causing it to wind around the shaft and thus producing his injuries. The respondent contends that the evidence wholly fails to support these findings and hence the judgment of dismissal was properly awarded.

There is no dispute but that the wooden guard collar was off from the set-crew before the plaintiff's clothing was wound around the shaft. All the witnesses testifying to this fact state that it was found on the shaft near the wooden pulley to the west of the clothing on the shaft, and hence it was necessarily placed there before the clothing became wound around the shaft. From this it also follows that the set-screw was uncovered and left in a condition to catch the plaintiff's clothing. Plaintiff states that he did not observe what part of his clothing started to wind on the shaft, but testified that he felt something grip him and that he felt a jerk over the right

breast.   While there is no direct evidence of any one observing the clothing and set-screw come into contact, the facts and circumstances showing plaintiff's position, the location of his hand, wrist, and arm over the revolving unguarded set-screw, furnish a basis for the inference that the set-screw caught the sleeve of his jacket and pulled it sufficiently to start it winding on the shaft before the set-screw became disengaged.   In the light of the situation thus presented it is not only a reasonable inference that this result could follow, but it is a natural and most probable result of the facts and circumstances disclosing plaintiff's situation in relation to this revolving set-screw, and the jury were well justified in finding this to be the fact.   It is argued that this inference is wholly negatived by the facts tending to show that the plaintiff struck against the shaft while facing it, bruising and injuring his chest, before he became suspended by his clothing with his back to the shaft.   We perceive nothing in this negativing the inference that the plaintiff's clothing first caught on the set-screw, that it then started to wind on the shaft, that he was then drawn against the shaft with such violence as to produce these injuries to his right and left breasts, and that finally he was left suspended as described by the witnesses.

The jury's finding that the defendant in the exercise of ordinary care ought to have known of the unguarded condition of the set-screw in time to have securely guarded it before the plaintiff was injured is assailed as unsupported by the evidence.   In the light of the allegations and the evidentiary facts tending to show that the negligence charged consisted in using a defective wooden collar over the set-screw, which did not securely guard it, it must follow that the court and jury understood by this and the first finding in the verdict that the negligence referred to in these findings was the defendant's omission to securely guard this set-screw through using this defective collar, and that the accident was attributable thereto. Does the evidence sustain the finding that the defendant in

the exercise of ordinary care ought to have discovered that the wooden collar was defective and to have repaired it before the injury? The condition of the collar is discoverable from an inspection. Such an inspection shows a defect which indicates its liability to slip off from the set-screw. It also bears marks of wear, tending to show that it had slipped over the set-screw. There is evidence to the effect that the collar with the wire around it had been off the set-screw when the machine was in operation at different times, some of them a long time prior to the accident. Under these circumstances it is reasonably clear that the defendant in the exercise of ordinary care should have discovered the defect in the wooden collar and that it did not furnish a secure guard.

Upon the defendant's motion the trial court changed the jury's finding that the plaintiff was not guilty of any want of ordinary care contributing to produce his injuries and held him guilty of contributory negligence as matter of law, and hence dismissed the complaint. Is this ruling justified by the record? As declared in *Clary v. C., M. & St. P. R. Co.* 141 Wis. 411, 123 N. W. 649:

"The correct inquiry in such case, where the burden of proof is upon the defendant, is not whether there is evidence to support the finding of the jury, because that may be supported by lack of evidence in whole or in part, but whether there is uncontroverted evidence which supports the ruling of the trial court."

The claim here is that the plaintiff had been instructed how to put the grease into the grease cups and had been told to avoid reaching over the revolving shaft, the wooden collar, and the set-screw by turning the clutch pulley so as to place the grease cups to the north of the shaft and its attachments before filling them, and that the exercise of ordinary care required this course of operation in the performance of this duty. The court submitted this inquiry to the jury in a proper way upon these grounds and they found that the evi-

dence did not establish his contributory negligence.   Is there uncontroverted evidence showing that the defendant was guilty of a want of ordinary care in doing as he did and that this proximately contributed to produce his injuries?   The defendant asserts that the plaintiff was instructed to turn the clutch pulley so as to place the grease cups to the north of the shaft before he was to attempt to fill them, and that he disregarded the instruction.   The plaintiff denies that he received this instruction either by word or by being shown to so perform this duty.   It was for the jury to pass upon this conflict in the evidence.

It is further urged that without such instruction it was negligent as a matter of law for him to reach over the revolving shaft to fill the grease cups and thus place his wrist and arm in close proximity to the revolving shaft and wooden collar, or the shaft and the set-screw if the collar had been removed.   Upon this point it is urged that if the wooden collar was then off from the set-screw, reaching across these revolving parts of machinery was so open and obvious a danger as to preclude an inference that he exercised ordinary care in performing his duty.   This contention assumes that the plaintiff knew or ought to have known of the presence of the exposed set-screw, but there is no proof to this effect.   The evidence tends to the contrary, for the plaintiff states that he observed no change or difference in the situation and conditions before him from what they were theretofore, and that he did not specially observe the set-screw or the wooden collar, but that things looked as usual to him.   It is evident that if there was no guard over the set-screw it could not be seen on the shaft while it revolved at the rate of speed shown here. To say as matter of law that the plaintiff acted negligently in doing as he did, it must be held that the act of reaching over the moving shaft in the manner he describes constituted a want of ordinary care.   *Walker v. Simmons Mfg. Co.* 131 Wis. 542, 111 N. W. 694.   We cannot so regard it.   In the light

of the conditions before him and his knowledge of them he had the right to act upon the assumption that he was not exposed to danger from the set-screw or that it was securely guarded. If it had been securely guarded we cannot say that placing his arm with the jacket sleeve on it where he did in order to fill the grease cup was an act inherently and obviously dangerous. Nor does the fact that he came near the revolving shaft with his arm clothed as it was necessarily show that he placed himself in obvious danger. We are persuaded that his conduct in performing these duties is not so clearly negligent as to establish affirmatively as matter of law that the plaintiff was guilty of a want of ordinary care proximately contributing to produce his injuries. The burden of showing plaintiff's want of ordinary care rested on the defendant; it cannot be held to have been shown as matter of law unless the undisputed evidence supports such a conclusion. We find no evidence that clearly and incontrovertibly establishes that the plaintiff failed to exercise ordinary care in the performance of his duty.

Appellant's counsel places much reliance on the case of *Muenchow v. Theo. Zschetzsche & Son Co.* 113 Wis. 8, 88 N. W. 909, as a controlling authority in this case. We do not regard the facts on which negligence is predicated in that and in this case as at all alike. It also appears that the decision in the *Muenchow Case* is based on the ground that the plaintiff assumed the risk. This does not apply to the plaintiff in this case under the existing law.

The order of the trial court changing the jury's finding, by which they found that the plaintiff was free from contributory negligence, was erroneous and must be set aside and the jury's answer to question number 6 be restored.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to the trial court to reverse its order changing the answer to question 6 of the verdict as returned by the jury and to restore the answer of the jury

thereto, and to award plaintiff judgment upon the verdict as rendered by the jury.

VINJE, J. (*dissenting*). The first two questions and answers of the special verdict are as follows:

"(1) Was the wooden collar off the iron collar so as to leave the set-screw unguarded at the time plaintiff was injured? A. Yes.

"(2) If you answer the first question 'Yes,' then answer this question: Ought the defendant, in the exercise of ordinary care, to have known of such unguarded condition of the set-screw in time to have securely guarded the same before plaintiff was injured? A. Yes."

From these two questions it is apparent that an issue was made by the evidence as to whether or not the wooden collar was on, or off from, the iron collar at the time of the injury. The jury not only found that it was off, but that it had been off so long that the defendant in the exercise of ordinary care ought to have known such fact and guarded the set-screw before plaintiff was injured. How such findings can properly be construed to mean merely that there was a defect in the wooden collar, and that by reason of such defect it came off while plaintiff was oiling, passes my comprehension. Language so simple and plain as that employed in the questions is not susceptible of construction. The jury say the wooden collar was off the iron collar *so as to leave the set-screw unguarded* at the time plaintiff was injured. Is there any suggestion here of a defect in the wooden collar? How can it be said in the face of this finding, the correctness of which is not challenged, that the wooden collar was on the iron collar at the time the plaintiff was injured or at the time he began oiling? By the phrase "the time plaintiff was injured" the jury must have meant the whole time he was there oiling, for in answer to the next question they say defendant ought to have known of such unguarded condition of the set-screw in time to have securely guarded the same before plaintiff was

injured.    This is a finding that it had been off some consid-
erable time before plaintiff began oiling.    And the phrase
"such unguarded condition" relates to the unguarded condi-
tion found in answer to the first question, which they say was
produced by the wooden collar being off the iron collar.    In
neither questions nor answers is there any hint or whisper of
a defective condition of the wooden collar.    Nor is there any-
thing in the answers to suggest or intimate that it was on the
iron collar at the time plaintiff was injured.    The jury were
not asked to find what caused the wooden collar to come off.
They were asked the simple question: Was it off the iron col-
lar so as to leave the set-screw unguarded at the time plaintiff
was injured ?    An affirmative answer to this question estab-
lished these facts: (1) That the wooden collar was off the iron
collar; (2) that it was off to such an extent as to leave the
set-screw unguarded: that is, it was entirely off, for other-
wise the set-screw could not become unguarded, as it fitted
into an inside slot in the center of the wooden collar; and
(3) that it was off at the time plaintiff was injured.    An af-
firmative answer to the second question established the fact
that it had been off at the time plaintiff was injured long
enough to give constructive notice thereof to the defendant in
time to remedy it before the injury.    But the court says:

"The jury's verdict must be interpreted in the light of the
allegation setting forth a cause of action arising out of a
failure to perform the duties imposed by this statute [sec.
1636j, Stats. 1898].    We cannot doubt that it establishes, in
accordance with the charges of negligence in the complaint,
that the defective wooden collar placed over the set-screw as
a guard did not securely guard it, that it slipped off from the
set-screw by reason of its defective condition just before the
plaintiff's clothing was caught,—either because the plaintiff's
wrist came into contact with it, or without such contact,—and
that the plaintiff's clothing was caught by the set-screw, caus-
ing it to wind around the shaft and thus producing his in-
juries."

In my judgment this portion of the opinion is in direct conflict with the verdict as set out in the statement of facts. Reference is made in the opinion to the charge of negligence in the complaint. The latter alleges that the injury was the result of a failure on the part of defendant to warn plaintiff of the danger and of its negligently "permitting the wooden collar intended as a guard to become worn, defective, and loose, *and entirely off from and detached from said iron collar."* This would seem to be an allegation of the fact that the wooden collar *was* off from the iron one as well as an allegation of the fact that it was worn, defective, and loose. The inference is that it was off because of its defective, worn, and loose condition. It is not an allegation that it came off while plaintiff was injured owing to its defective, worn, and loose condition. So the complaint does not help out the construction given the verdict by the court. But enough has been said; for when language is so plain in its phraseology and so obvious in its meaning as is the language employed in the two questions referred to, construction thereof serves to confuse rather than elucidate.

In view of the jury's answers to the first two questions it does not create surprise to find counsel for plaintiff saying, in speaking of the contention that the wooden collar came off while plaintiff was oiling: "No instructions were requested by defendant or given by the court on this phase of the case, and the contention does not assume perceptible proportions until after verdict." Plaintiff's only testimony relative to the situation of collar and shaft was, "I did not notice anything different that morning from any other morning;" and "I did not notice anything about the iron and wooden collar there." It seems that upon this testimony alone—amounting to scarcely more than an admission of a failure to observe—the plain verdict of the jury is swept aside and given a construction that, in the language of counsel, has assumed all its proportions since it was rendered, for I cannot believe

that either the trial court or the jury dreamt of any such construction.

Counsel for plaintiff admit that, if the wooden collar was off from the iron collar when plaintiff began oiling, he must have seen it, as it would be riding on the shaft, and they further admit that if he saw it in such a situation and proceeded to oil as he did he would probably be held guilty of contributory negligence. The jury either did not believe plaintiff when he testified as referred to above, if it is to be construed as the court construes it, namely, that the wooden collar was on the iron collar, or else gave his testimony the construction that he merely failed to observe, for they did find that the wooden collar was off the iron collar at the time he was injured. This finding, coupled with the further undisputed fact that plaintiff reached over the shaft to fill the oil cup instead of turning it towards him, as he could easily have done, thus avoiding the necessity of exposing himself to any danger whatsoever, furnishes an adequate reason why the trial court changed the answer to question 6 from No to Yes and found plaintiff guilty of contributory negligence. Such a ruling of the trial court should not be set aside unless clearly wrong. *Kroger v. Cumberland F. P. Co.* 145 Wis. 433, 130 N. W. 513; *McCune v. Badger,* 126 Wis. 186, 105 N. W. 667. In my opinion the ruling was right.

But it is said there is no evidence to support the finding that the wooden collar was off the iron one at the time plaintiff was injured. There is no direct evidence to that effect, neither is there any to the effect that it was then on. It was all a matter of inference from other facts proven, and the inference that it was off finds as much support in the evidence as does the inference that it was on, and has, besides, the finding of the jury to sustain it.

MARSHALL, J.    I concur in the foregoing opinion of Mr. Justice VINJE.