Koch, Respondent, vs. WISCONSIN PEA CANNERS COMPANY, Appellant.

*January 31—February 18, 1913.*

*Master and servant: Injury from unguarded set-screws on shaft: Dangerous location: Contributory negligence: Evidence: Questions for jury.*

1. In an action for injuries sustained by an employee whose coat was caught by a set-screw on a revolving shaft near which he was obliged to stand while oiling a gasoline engine in defendant's factory, the question whether the set-screws were so located as to be dangerous to employees in the discharge of their duties—so that under sec. 1636*j*, Stats., it was the duty of the employer to securely guard them—is *held,* upon the evidence, to have been for the jury.

2. Upon evidence tending to show, among other things, that the engine room was rather dark; that when the engine was running the set-screws could not be seen, and that plaintiff did not know they were there; that the factory was crowded with work and running very long hours; that plaintiff worked from fourteen to twenty-two hours a day; that ordinarily he wore no coat, but wore one at this time because he was not feeling well; that he had been ordered to try a new oil without delay; that to stop the engine while filling the oil cup would involve a delay of twenty minutes, during which twenty-eight or thirty employees would be idle; and that therefore he attempted to remove the cup and put in the oil while the engine was running, it is *held* that the question of plaintiff's contributory negligence was also for the jury.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

This action was brought to recover for personal injuries sustained by plaintiff while employed about a gasoline engine used by defendant in its business, by being caught on a set-screw which was attached to a revolving shaft, said shaft and set-screw being attached to and part of said engine. The injury occurred July 4, 1908, at the village of Mishicott, Wisconsin. Damages in the sum of $20,000 are claimed in the complaint. The defendant admits that it was the owner and operator of the engine, that plaintiff was in its employ, and that he sustained injuries; and denies other allegations of the complaint.

At the close of the plaintiff's evidence defendant moved for nonsuit, which was denied, and at the close of all the evidence defendant moved for a directed verdict in its favor, which was denied. The jury returned the following verdict:

"(1) Was the plaintiff caught by a set-screw which projected from an unguarded shaft of the engine, and thereby injured? *A.* Yes.

"(2) Was said shaft with said projecting set-screw, so located as to be dangerous to any employee of said defendant whose duty it was to run said engine? *A.* Yes.

"(3) Did any want of ordinary care on the part of the plaintiff contribute to his injury? *A.* No.

"(4) What sum of money will reasonably compensate the plaintiff for his injury? *A.* Five thousand ($5,000)."

The usual motions were made after verdict, which were denied and due exceptions taken to each and every denial of said motions. Judgment was rendered on the verdict in favor of the plaintiff, from which this appeal was taken.

For the appellant there were briefs by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

For the respondent there was a brief by *Martin, Martin & Martin,* and oral argument by *J. F. Martin.*

KERWIN, J.   The plaintiff was in charge of the canning plant when injured, subject to the direction of the manager of the company, who made visits and gave directions weekly.

The machinery was operated by a sixty horse-power gasoline engine.   There were six machines in the factory, operated by this engine and used for hulling and vining peas. The plaintiff had charge of the engine and plant and general control in the absence of the manager.   The engine room was between twenty-four and thirty feet long and from twelve to fourteen feet wide, extending east and west.   The engine stood lengthwise of the room with the cylinder and governor's gear to the west, the fly-wheel to the east, and the driving shaft on the south side as the engine stood in the room.   This shaft transmitted the power.   There was a space of about three feet between the south wall and the engine.   The cylinder of the engine was from three to three and one-half feet long and the outside diameter from eighteen to twenty inches. There was a concrete base under the engine extending about six inches south of the south side of the shaft.   The collar on the shaft just to the right of the governor's gear was a little less than four inches in diameter.   The shaft to which the collar was fastened was from one and three-fourths to two inches in diameter and about three feet from the floor.   The collar through which the set-screws passed was from one and one-half to one and three-fourths inches wide and about one inch thick.   The heads of the set-screws were a little more than half an inch square.   The governor's gear, collar, and set-screws close to the east side of it were towards the westerly end of the shaft, with a space of about eighteen or twenty inches between the collar and the outside of the fly-wheel. The shaft, when the engine was working, made between ninety-five and one hundred revolutions per minute.

The oil cup which plaintiff was removing when injured was on the easterly end of the cylinder.   The bottom of the oil cup was about five feet from the floor, the top of the

cylinder four and one-half feet from the floor, and the top of the oil cup about five and one-half feet from the floor. When plaintiff stood beside the shaft with his coat on, the shaft came six or eight inches above the bottom of his coat. There was no shaft on the north side of the engine.

Plaintiff was forty-two years of age at the time of the trial; had had some experience in running a threshing engine and a steam engine, the latter in defendant's plant at Two Rivers, and had worked for defendant during several seasons prior to the time of injury. On the 4th day of July, 1908, a messenger was sent to plaintiff by the manager with a new kind of oil with instructions to give it a trial right away. While plaintiff was engaged in removing the oil cup from the top of the cylinder for the purpose of giving the new oil a trial, he was caught on the shaft and severely injured. Two photographs of the engine are part of the record and before us. The south side of the shaft is about eight inches from the south side of the cylinder. A perpendicular line drawn through the center of the oil cup to the floor would be seventeen or eighteen inches from the south side of the shaft.

The two main questions involved in this case are (1) whether the set-screws were so located as to be dangerous to employees in the discharge of their duties; and (2) whether plaintiff was guilty of contributory negligence as a matter of law.

Both of these questions were submitted to the jury and found in favor of the plaintiff, and the findings of the jury were sustained by the court below. We are unable to say that the trial court was clearly wrong in upholding the verdict, therefore we cannot disturb it. The passageway between the south side of the engine and the south wall was necessarily used by plaintiff in the discharge of his duties. The machinery was oiled from that side, some of the oil cups or oiling places being in close proximity to the collar and set-screws, and it was necessary to stand quite close to the

shaft in doing the oiling.    It was the duty of plaintiff to see
that the engine was kept properly oiled, and this oiling was
done several times a day while the engine was running.

Under the evidence in this case we think it clear that the
question whether the set-screws were so located as to be dan-
gerous to employees in the discharge of their duties was a
question for the jury.  *Miller v. Kimberly & C. Co.* 137
Wis. 138, 118 N. W. 536; *Kruck v. Wilbur L. Co.* 148 Wis.
76, 133 N. W. 1117; *Monahan v. Fairbanks-Morse Mfg. Co.*
147 Wis. 104, 132 N. W. 983; *Monaghan v. Northwestern
F. Co.* 140 Wis. 457, 122 N. W. 1066; *McGinnis v. North-
ern P. Mills,* 147 Wis. 185, 132 N. W. 897, 133 N. W. 22;
*Koutsky v. Forster-Whitman L. Co.* 146 Wis. 425, 131 N.
W. 1001; *Chopin v. Combined Locks P. Co.* 134 Wis. 35,
114 N. W. 95.    The set-screws being so located as to be
dangerous to employees, it was the duty of the defendant to
properly guard them.

But it is strenuously insisted that the plaintiff was guilty
of contributory negligence as matter of law, therefore no re-
covery can be had in this action.    There is credible evidence
tending to show that the engine room was rather dark, being
lighted only by two small windows on the north side; that
the plaintiff did not know the collar was fastened to the shaft
by set-screws, but supposed it was fastened by a key; that the
defendant was very much crowded with work at the factory,
and was running very long hours, all day and part of the
night; that the day before the injury plaintiff had worked
until 11 o'clock at night and commenced work the day of the
injury at 3 o'clock in the morning; that he worked from four-
teen to twenty-two hours a day; that ordinarily he wore no
coat, but this day he was not feeling well and wore one with
one or two of the middle buttons fastened; that the large oil
cup on top of the cylinder was filled morning, noon, and even-
ing when the engine was not running, but this day he was
ordered to try the new oil without delay, and, the engine

being running at the time the oil was delivered, he attempted to remove the cup and put in the oil; that if the engine were stopped while filling the cup a delay of twenty minutes would be occasioned, during which time twenty-eight or thirty members of the crew would be idle; that the "set-screws were down below the back of the governor so you would never see them if you would stand anywhere around." One witness testified that although he had worked around considerably he had never seen the set-screws, and that when the engine was operating you could not see them; that plaintiff was six inches from the shaft when he began to take off the oil cup. Plaintiff testified that when he attempted to take off the oil cup he did not know the set-screws were there; that he reached over, took the wrench, and reached over to the cup on top of the cylinder and put the wrench on and gave a jerk so as to loosen the cup, and the set-screws caught his coat and pulled him down on the cylinder and shaft. It is needless to review the evidence further. We are convinced that the question of the plaintiff's contributory negligence was for the jury. *Hoffman v. Rib Lake L. Co.* 136 Wis. 388, 117 N. W. 789; *Monahan v. Fairbanks-Morse Mfg. Co.* 147 Wis. 104, 132 N. W. 983.

Error is assigned on remarks of plaintiff's counsel to the jury and also as to the form of the second question of the special verdict. We find no prejudicial error under these heads.

*By the Court.*—The judgment is affirmed.