HERNING, Administratrix, Respondent, vs. HOLT LUMBER COMPANY, Appellant.

*March 11—April 8, 1913.*

*Master and servant: Death caused by unguarded shafting: Delegation of master's duty: Responsibility of servant: Contributory negligence: Lubricating machinery in motion: Questions for jury: Special verdict: Sufficiency: Damages: Burial expenses.*

1. An employer upon whom the statute imposes the duty of securely guarding shafting which is so located as to be dangerous to employees cannot evade such duty, as to a subordinate employee, by a mere direction to him, given through a superintendent or foreman, to assist in erecting or assembling the machinery in question, in the erection or assembling of which other employees superior to him in authority are also engaged at the time.

2. In an action for death of an engineer which resulted from his being caught on an unguarded shaft connected with a stationary engine, the evidence is *held* to sustain a finding by the jury that defendant did not intrust to the decedent the duty of getting the engine and its attachments in proper condition for use.

3. The mere fact that an employee had an opportunity on his own initiative to devise and place a guard upon an exposed shaft is not sufficient to relieve the employer from liability for injury sustained by such employee as a consequence of the shaft being unguarded.

4. A special verdict finding, among other things, that the unguarded shaft by which an employee of defendant was injured was so located as to be dangerous to defendant's employees in the discharge of their duty while using ordinary care, and negativing

contributory negligence, is *held* sufficient, although there was no specific finding of defendant's negligence or of proximate causation.

5. Whether or not the plaintiff's intestate, who was fatally injured as a result of being caught on a revolving shaft connected with a stationary engine which he was engaged in lubricating, was guilty of a want of ordinary care in failing to stop the engine before attempting to apply the lubricant, is *held* in this case to have been a question for the jury.

6. Where defendant's negligence is claimed to have caused fatal injury to plaintiff's intestate and it is sought to recover both the damages accruing to the decedent and those accruing to his surviving parents, burial expenses may be recovered under either cause of action; but when the action is brought for death and for the benefit of relatives who have no duty of interment cast upon them by law, that item of damages should not be included in an award under the death statute.

APPEAL from a judgment of the circuit court for Marinette county: E. B. BELDEN, Judge. *Affirmed.*

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *I. A. Fish,* of counsel, and oral argument by *Mr. Fish.*

*Pierre Martineau,* for the respondent.

TIMLIN, J. The complaint in this cause averred that plaintiff's decedent, John Herning, on August 1, 1910, while in the employment of defendant and engaged in performing the duties of such employment, came to his death in consequence of being caught on a revolving shaft so located as to be dangerous to the employees of defendant in the discharge of their duties; that the defendant negligently permitted this shaft to be unguarded and unfenced. One count of the complaint sought to recover damages accruing to the decedent and another damages accruing to his surviving father and mother, a combination which is permissible under our statutes. The jury awarded under the first count above referred to (being the second count of the complaint) $1,227, which included an item of $107 for burial expenses, and under the second count $2,500.

*Special Verdict.*

"(1) Did the defendant, the *Holt Lumber Company,* intrust to John Herning the duty of getting the engine and its attachments in proper condition for use at Townsend? *A.* No.

"(2) Had the defendant the right, in the exercise of ordinary care, to believe that John Herning would properly guard the shaft before operating the engine? *A.* No.

"(3) Was the shaft by which John Herning was injured so located as to be dangerous to defendant's employees in the discharge of their duty while using ordinary care? *A.* Yes.

"(4) Did any want of ordinary care on the part of John Herning proximately contribute to his injury and death? *A.* No.

"(5) What sum of money would reasonably compensate John Herning for the damages caused to him by reason of his injury in question? *A.* (a) Pain and suffering, $1,000. (b) Expenses of medical treatment, $120. (c) Burial expenses, $107.

"(6) What sum of money will reasonably compensate the father and mother of John Herning, deceased, for the death of their said son? *A.* $2,500."

Appellant contends that the evidence shows without dispute that the decedent was by his employment charged with the duty of putting the engine in question and its attachments, including the shaft, in proper condition for use, and also had charge and control of the operation of such engine, and upon this hypothesis bases two conclusions of law, either of which, it contends, relieves it from liability, viz.: (1) the decedent having been charged by his employer with and having assumed the duty of putting the engine and its attachments into proper condition, was negligent in not guarding or fencing the shaft if it was so located that the law required it to be fenced or guarded, hence cannot recover; (2) decedent should in the exercise of ordinary care have stopped the engine before attempting to lubricate the bearings of the shaft in question.

Without conceding the legal accuracy of the first conclu-

sion, it is manifest that no such question arises if the first answer of the special verdict is supported by evidence. W. A. Holt, the vice-president and manager of defendant, gave directions to one Ferguson, foreman of one of defendant's mills and a mechanic, to erect a hoist for handling logs at Townsend, using machinery for that purpose which defendant had on hand at another place. Part of this hoist consisted of a portable steam engine and boiler so constructed that the engine, driving shaft, and fly-wheels were fastened on top of the boiler, and this outfit was brought from Ontonagon to Oconto, where one of the fly-wheels was taken off and left, thus leaving the end of the shaft which formerly carried this fly-wheel projecting, exposed, and having a key seat grooved in the side of its projecting end. Holt and Ferguson were at Oconto, and there the latter worked on the outfit under the directions of Holt, and from there the outfit was sent to Townsend to be set up and put in place. But this setting up and putting in place could not change and was not intended to change the relative position of the boiler, engine, and shaft. That was fixed. Ferguson, acting under Holt, also went to Townsend to erect, assemble, or help in the erection and assembling of this machinery, and there was also sent up a millwright or carpenter named McKalson. Subordinate to Holt was Paul McDonald, superintendent of all the logging work on the Oconto river, and this hoisting plant was under his supervision. Under Paul McDonald was a subordinate foreman named Ed Hereld, whose duty it was to look after the job at Townsend and get the hoist ready, and who had charge of the men there to do the loading and putting up the hoist. Paul McDonald employed the decedent and told him to put up the engine and hoist and fit up the engine. He testifies that he looked to Herning for the erection and getting into condition of this engine at Townsend. Mr. Holt testifies that Hereld was foreman at the hoist under McDonald and that he had power to hire and discharge any man in the crew, and

the crew consisted of an engineer, fireman, the men that ran the jammer, men that worked the cars loading, men bucking the logs up the slides and working on the river. True, he also testified that Hereld had never had any authority to hire or discharge an engineer. It is quite manifest that Herning was a subordinate below the rank of superintendent or foreman whom the foreman himself, subordinate to Superintendent Holt, directed to assist in the erection and placing of the machinery. Several others superior to Herning were likewise directed by authority superior to the foreman who directed Herning or of equal rank with such foreman. From this it appears that the answer of the jury to the first question above quoted is well supported by evidence. Certainly Holt, Ferguson, and Paul McDonald were the superiors of Herning, and there is fair room for the inference by the jury that Hereld and McKalson were also such superiors in the matter of assembling, placing, and operating the hoist.

If the defendant corporation could pass the statutory duty of covering this shaft down along the line of its employees until it reached the engine driver, who was told by the subordinate foreman employing him that he should assemble and place the machinery, which under the circumstances in evidence must have meant to aid in the assembling and placing thereof, the statute would soon become a dead letter. Decedent's superior who planned and laid out the work failed to provide a guard for this exposed shaft; so did the next in authority, and the next. The position or location of the shaft with reference to its distance from the floor and its relation to the bearings thereon requiring lubrication could not be changed by the decedent or any one else without an entire reconstruction of the engine, which could only be done in a machine shop. The most that can be said on the evidence is that the plaintiff had the opportunity on his own initiative to devise and place a guard upon the exposed shaft. So ordinarily has any workman. The statute places this duty upon

the employer. He cannot evade it by merely ordering a sub-ordinate employee to erect or assemble the machinery, in the erection or assembling of which the superiors are also engaged at the time. Had a guard been supplied by the employer which the decedent neglected to put in place, a different question might arise. We are satisfied that the answer of the jury to the first question is well supported by evidence and that the first proposition advanced by appellant does not arise in this case. There are also other contentions of appellant hinging upon the theory that it was the duty of decedent, not that of his employer, to cover the shaft in question, all of which must be overruled without extended comment.

The special verdict is substantially similar to that in *Willette v. Rhinelander P. Co.* 145 Wis. 537, 130 N. W. 853, upon which judgment was ordered by this court for the plaintiff provided he consent to a reduction of damages, and such verdict is sufficient.

With reference to the fourth question of the special verdict the case is closer. Decedent could have stopped the engine for the purpose of lubricating the bearings in question. Was he imperatively required to do so in the sense that his omission to take this precaution was negligence in law? On this point the case is somewhat similar to *Koch v. Wis. P. C. Co.* 152 Wis. 488, 140 N. W. 37. There the person injured was an engine driver, had power and authority to shut down the engine, but undertook to oil the bearings while in motion. There the emergency was an order to try some new lubricant which the master desired to experiment with without delay. Here the emergency was the discovery of a hot box. In the former case, instead of shutting down the engine to oil, Koch attempted to oil while the engine was in motion. Here the same thing was done. In *Monahan v. Fairbanks-Morse Mfg. Co.* 147 Wis. 104, 132 N. W. 983, the act of reaching over a shaft in motion for the purpose of filling grease cups was held not to constitute contributory negligence as matter of

law, the plaintiff being unaware of the presence of the exposed set-screw. In *Willette v. Rhinelander P. Co.* 145 Wis. 537, 130 N. W. 853, the plaintiff was injured while oiling machinery so located as to be dangerous to an oiler in the discharge of his duty using ordinary care, while such machinery was in motion. The jury found absence of contributory negligence. The trial court changed that answer so as to find contributory negligence. This court reversed the judgment and permitted the plaintiff to take judgment for a stated amount of damages. See, also, *Klotz v. Power & M. M. Co.* 136 Wis. 107, 116 N. W. 770. In the instant case the engine was not in operation long enough to enable the jury to say that any regular practice obtained with reference to stopping the engine for lubrication or otherwise when the bearings were discovered to be heated from friction. Whether an ordinarily prudent man in decedent's position under the circumstances existing in the instant case would have shut down the engine and stopped work for the purpose of putting the graphite lubricant upon the hot bearing, or would have attempted to apply it as decedent did, was for the jury.

The item of $107, assuming it to be reasonable in amount, for burial expenses, was a charge against the estate of decedent which his administrator must pay out of the assets of the estate. The item of $1,000 for pain and suffering was assets of that estate; and the verdict allows as compensatory damages to that estate in addition the expense of medical attendance and the burial expenses. Sec. 3852, Stats., makes burial expenses a debt of the estate, and it must be paid either out of the $1,000 or out of decedent's other property if he had any. In either case it is direct diminution of his estate caused by the wrongful act of defendant. It is included in the sum awarded under the second count of the complaint and covered by the fifth question of the special verdict. In *Secard v. Rhinelander L. Co.* 147 Wis. 614, 133 N. W. 45, it was held that such outlay was recoverable by a father under

the death statute. It may in such case be recovered under either cause of action, but when the suit is brought for death and for the benefit of such relatives as have no duty of interment cast upon them by law, this item of damages should not be included in an award under the death statute.

*By the Court.*—Judgment affirmed.