VAN GILDER, Plaintiff and Respondent, vs. GUGEL and another, Defendants and Appellants : MEICHER and others, Defendants.

*February 5—March 3, 1936.*

For the appellants there were briefs by *Gilbert, Ela, Heilman & Raeder,* and oral argument by *G. Burgess Ela* and *Oscar Christianson,* all of Madison.

For the respondent Corabelle Van Gilder there was a brief by *Hill, Beckwith & Harrington* of Madison, and oral argument by *D. V. W. Beckwith.*

For the defendants Meicher, South Park Street Garage, and Casualty Reciprocal Exchange there was a brief by *Schubring, Ryan, Petersen & Sutherland,* and oral argument by *R. J. Sutherland.*

FRITZ, J.   The defendants, William and Louis Gugel, appeal from a judgment holding them and their codefendants liable to the plaintiff, Corabelle Van Gilder, for damages for the pecuniary loss and loss of society and companionship sustained by her by reason of the death of her husband, John L. Van Gilder, as the result of negligence chargeable to the defendants.   Van Gilder was killed while riding in an automobile which overturned while it was being operated by the defendant, Meicher, shortly after dark on November 12, 1934.   Meicher was driving eastward on the south half of a

tar surfaced highway at a speed of thirty-five to fifty miles per hour, and with the headlights adjusted so that he could see but forty to fifty feet ahead. Suddenly, he discovered that he was approaching a wagon, which was about twenty-five feet ahead of his car and also moving eastward on the south half of the highway. To avoid colliding with the wagon, Meicher turned abruptly to the north, and then he discovered that a westbound automobile was approaching one hundred or one hundred fifty feet to the east, on the north half of the highway; and, at the same time, his automobile ran onto loose gravel north of the tarred surface and started skidding. He tried to straighten it out but could not get it to come back. It skidded along until it rolled over on the north shoulder and came to a stop against the approaching westbound automobile. The wagon, on which there was an empty hayrack, belonged to the appellants, and was being driven by their employee, Albert Schroeder. It had no reflector signal at the rear. Schroeder testified that there was a lighted lantern, but other witnesses testified to the contrary.

The jury found that negligence on the part of Meicher in respect to lookout, speed, control, and passing the wagon on his left side of the road, which was not free from oncoming traffic, constituted proximate causes of the accident; that Schroeder was negligent in driving a wagon on the highway unequipped with a light or reflector signal, and that such negligence was also a proximate cause of the accident; that Van Gilder was not negligent as to keeping a lookout, and did not assume the risk of danger by riding with Meicher; that the proportions of the causal negligence were eighty-seven and one-half per cent on the part of Meicher, and twelve and one-half per cent on the part of Schroeder; and that plaintiff's damages were $5,000 "for pecuniary loss, including burial expenses," and $2,500 for loss of society and companionship. On that verdict the court entered judgment

for the recovery of the assessed damages from the defendants.  The defendants, Gugel, appealed.

The appellants' first contention is that no cause of action existed in favor of the plaintiff, Corabelle Van Gilder, as an individual under the provisions of secs. 331.03 and 331.04, Stats., for the death of her husband, and that the only cause of action, if any, was in favor of the personal representative of the estate.   In that connection, appellants claim that plaintiff is not entitled to maintain this action because there was a cause of action in favor of her husband's estate, for his funeral expenses.   He apparently died without sustaining any pain and suffering.   There are no allegations as to pain and suffering in the complaint, and no damages were claimed or assessed on that ground.   Likewise, there is no reference in the complaint or the prayer thereof in respect to funeral expenses.   None of the defendants alleged any facts, or asserted as defense in their answers that the plaintiff was not entitled to maintain the action because of any provision in secs. 331.03 and 331.04, Stats.   On the trial plaintiff produced and introduced in evidence, without objection, the funeral bill for $385, showing there was a credit of $150, which she testified had been paid; and she also testified that the cemetery lot cost $110, of which one third was apportionable for her husband's grave.   No other proof on that subject was offered.   The jury assessed her damages "as to pecuniary loss, including burial expenses," at $5,000.   No question as to plaintiff's right to maintain this action was raised by the appellants until on their motions after verdict. The court, in overruling those motions, said: "On the question of plaintiff's right to bring the action, the court is of the opinion that the action is properly brought; and further that the defendant has waived any right he may have had to object as to proper parties, by waiting until after verdict to raise the question; especially as it cannot be said it would

have made any difference in the results to the objecting defendants, and therefore they are not affected prejudicially."

In considering whether the widow was entitled to maintain this action, it is of controlling significance that, because Van Gilder sustained no conscious pain and suffering, there was no cause of action, and no claim made on that ground in favor of his estate or otherwise; and that there was no proof that his funeral or burial expenses were paid by, or in fact charged to, his estate. On the contrary, the evidence admits of the inference that the plaintiff had assumed the obligations therefor and paid them in part. If she voluntarily incurred that liability personally, she should be entitled to reimbursement therefor, although she would otherwise have been under no legal obligation to incur such liability. That appellants' counsel apparently acquiesced during the trial in the propriety of those inferences and conclusions under the evidence, is indicated by the fact that they failed to object to the court's submittal to the jury of a question which expressly included the item of funeral expenses as one of the elements to be included in assessing plaintiff's pecuniary loss.

As there was no cause of action in favor of Van Gilder's estate for pain and suffering, or for obligations incurred by the estate for funeral expenses, the plaintiff, as his widow, was entitled to bring this action under the provisions in sec. 331.04, Stats., that—

"(1) Every such action shall be brought by and in the name of the personal representative of such deceased person, and the amount recovered shall belong and be paid over to the husband or widow of such deceased person; . . . provided, that if there be no cause of action in favor of the estate of such decedent and the person or persons to whom the whole amount sued for and recovered belongs, as above provided, shall be the husband, widow, or parent or parents, lineal descendant or ancestors, brothers or sisters of the deceased, suit may at his or her or their option be brought di-

rectly in his or her or their name or names instead of being brought in the name of the personal representative of such deceased person."

In *Secard v. Rhinelander Lighting Co.* 147 Wis. 614, 622, 133 N. W. 45, which was an action brought by an administrator to recover damages for the benefit of a father for the death of his minor child, the court said:

"Complaint is made because the funeral expenses were allowed to be considered in determining the damages. No error was committed in that regard. It plainly constituted pecuniary loss of the father for whose benefit the action was brought. . . ."

In *Herning v. Holt Lumber Co.* 153 Wis. 101, 107, 108, 140 N. W. 1102, the court said, in respect to that statement:

"In *Secard v. Rhinelander L. Co.* 147 Wis. 614, 133 N. W. 45, it was held that such outlay was recoverable by a father under the death statute. It may in such case be recovered under either cause of action, but when the suit is brought for death and for the benefit of such relatives as have no duty of interment cast upon them by law, this item of damages should not be included in an award under the death statute."

Subsequently, the right of the widow to recover under the death statute, under such circumstances, for her outlay for her husband's burial expenses, was recognized in the following statement in *Keasler v. Milwaukee E. R. & L. Co.* 195 Wis. 108, 111, 217 N. W. 687:

"That the 'pecuniary injury' of the statute must be limited to such as have a direct connection with the family relationship existing between the person seeking to recover and the deceased is well illustrated in the cases passing upon the question of the right to recover in such an action for the amount expended for the burial of the deceased. If the suing relative be one upon whom the law places the duty or obligation of payment of such expenses he may recover—as the father, for instance, as shown in the case of *Secard v.*

*Rhinelander L. Co.* 147 Wis. 614, 622, 133 N. W. 45; or as stated in *Cochrane v. C. Hennecke Co.* 186 Wis. 149, 153, 202 N. W. 199, *the widow may;* while if the duty is not so placed or the payment made by the relative suing, such item belongs to the estate of the deceased and may be recovered there, as is stated in *Herning v. Holt L. Co.* 153 Wis. 101, 108, 140 N. W. 1102, for, primarily, the funeral expenses are a charge against the estate of the deceased. *Will of Borchardt,* 184 Wis. 561, 568, 200 N. W. 461; *Estate of Kelly,* 183 Wis. 485, 490, 198 N. W. 280."

Nothing to the contrary was held in *Neuser v. Thelen,* 209 Wis. 262, 244 N. W. 801, or in *Hegel v. George,* 218 Wis. 327, 259 N. W. 862, 261 N. W. 14. Although the judgment in the *Neuser Case* was reversed because the action should have been brought by an administrator instead of the surviving widow, that result was due to the existence of a cause of action in favor of the deceased's estate for pain and suffering. For that reason the recovery as part of a judgment in favor of a surviving widow of an item for funeral expenses (claim for which, in that case, also belonged to the estate), was held to fall with her action, in so far as it was brought by her to recover damages for her pecuniary loss as the result of her husband's wrongful death. Because of the existence of a cause of action in favor of her husband's estate, for his pain and suffering, that conclusion was proper in respect to the recovery by her of her pecuniary loss because of her husband's death, regardless of whether the claim for his funeral expenses belonged to her or to his estate. In the *Hegel Case, supra,* an administrator brought the action, but it was held that a cause of action for the wrongful death of plaintiff's decedent did not survive the death of the tort-feasor, who predeceased that decedent. But judgment was permitted to stand for the damages sustained during the decedent's lifetime, and, in that connection, we held (on a motion for a rehearing), that the claim for fu-

neral expenses, which was part of the cause of action in favor of the injured decedent's estate, also survived under the survival statute. However, nothing was said in either of the two decisions last referred to, that negatives the right of a widow to maintain an action to recover for her pecuniary loss by reason of her husband's death, when no cause of action exists in favor of his estate because he sustained no conscious pain and suffering, and his estate did not pay, and was not being held liable, for his funeral expenses.

Appellants further contend that the plaintiff cannot recover because Meicher and her husband, John L. Van Gilder, were engaged in a joint adventure at the time of the latter's injury as the result of Meicher's negligence, and that, therefore, that negligence is imputed to Van Gilder, and defeats any recovery by plaintiff for his death. The material facts as to whether they were engaged in any such joint adventure are as follows : Each of them had acquired a wood lot to cut wood for his own use or benefit. The lots were at Pine Bluff, which was so far from their places of residence that some means of transportation was necessary. The day preceding the accident, Van Gilder asked Meicher when he was going out to his lot. Meicher said that he was going the next morning, and invited Van Gilder to ride with him. They also arranged for Van Gilder to assist Meicher in sawing some of his wood in the morning, and for Meicher to help Van Gilder saw some of the latter's wood in the afternoon. Neither was to acquire any interest, joint or several, in the wood which had theretofore belonged to the other. The next morning Van Gilder rode to Pine Bluff in an automobile driven by Meicher, and owned by the South Park Street Garage, of which he was an officer. Each of the men helped the other saw his wood as arranged, and then they started for home in the same automobile, with Meicher driving. As there was no request for the submittal to the jury

of any question in regard to any such joint adventure, that issue would now have to be deemed determined by the court in conformity with the judgment, if, under the evidence, there was such issue for the jury, and the evidence admitted of a finding favorable to the plaintiff. Sec. 270.28, Stats.; *Delfosse v. New Franken Oil Co.* 201 Wis. 401, 407, 230 N. W. 31. However, the facts stated above establish, as a matter of law, that Van Gilder and Meicher were not engaged in a joint adventure. They were not joint owners or bailees of the automobile. It was solely under Meicher's control in every respect, and he did the driving. Neither the wood lots nor the wood were owned by Van Gilder and Meicher jointly or in common. Neither had or was to have any interest in either the land or the wood, before or after it was cut, which had theretofore belonged to the other. It continued to be the individual property of each original owner, to be used solely for his individual purpose. Consequently, the journey in question was not part of any business or enterprise in which they were jointly or mutually interested financially. Although each had a similar purpose in making the trip, it did not involve any joint financial interest to them, nor the performance of any joint duty on their part. Because of the complete absence thereof, there is no factual basis upon which to hold that they were engaged in a joint adventure or enterprise, and that, therefore, Van Gilder was charged with Meicher's negligence in operating the automobile. *Bernard v. Jennings,* 209 Wis. 116, 244 N. W. 589; *Brubaker v. Iowa County,* 174 Wis. 574, 183 N. W. 690; *Schleicker v. Krier,* 218 Wis. 376, 261 N. W. 413; *Fischbach v. Wanta,* 212 Wis. 638, 250 N. W. 387. Neither do the facts sustain appellants' contention that Meicher was the gratuitous agent of Van Gilder, and that, therefore, his negligence was imputed to Van Gilder. No such agency existed because Meicher was not operating the automobile for

Van Gilder, as the owner thereof; neither was Meicher under the control of, or subject to any directions by, Van Gilder in operating it. In those respects, the case at bar differs materially in point of fact as well as legal consequences, from cases in which a driver is acting as a gratuitous agent for a passenger, who is the sole or joint owner, or the person in control of an automobile which is being driven for his benefit with the operation and destination thereof under his control (see *Schmidt v. Leary,* 213 Wis. 587, 252 N. W. 151; *Philip v. Schlager,* 214 Wis. 370, 253 N. W. 394; *Edwards v. Kohn,* 207 Wis. 381, 241 N. W. 331; *Gehloff v. Kandler,* 204 Wis. 464, 234 N. W. 717); or in which a driver is performing work for another, who is riding in the automobile, or is acting in the course of employment by the latter (see *Georgeson v. Nielsen,* 214 Wis. 191, 252 N. W. 576; *Price v. Shorewood Motors, Inc.,* 214 Wis. 64, 251 N. W. 244).

Appellants also contend that, even if Albert Schroeder was negligent in driving their wagon on the highway without having it equipped with a rear light or reflector signal, that negligence was not a proximate cause of the accident, as found by the jury. Appellants claim that the only proximate causes were Meicher's negligence in respect to speed, lookout, control, trying to pass the wagon by turning onto the left side of the road which was not free from oncoming traffic; and driving with his lights adjusted so as to illuminate only forty or fifty feet ahead, in violation of sec. 85.06 (2), Stats. (which requires illuminating power sufficient to reveal any vehicle two hundred feet ahead of the headlights).

A review of the record discloses that the jury's finding that Schroeder's negligence in driving on the highway without having the wagon equipped with a rear light or reflector signal was a proximate cause, was fully warranted by credible evidence to the following effect: At the place of the acci-

dent, the highway had an eighteen-feet-wide tarred, black-top surface, with a two-feet-wide graveled and two-feet-wide grass shoulder to the south, and a five-feet-wide graveled and two-feet-wide grass shoulder to the north. The accident occurred after it had become dark. Schroeder had a seven-feet-wide, weather-beaten hayrack on a steel frame wagon, with a space of four and one half feet between the right and left wheels. He was driving eastward with the right wheels on the south grass shoulder so that the left wheels were about one foot, and the rack extended two and a half to three feet, north of the south edge of the tarred surface. That left six feet of unobstructed black top to the south of the center line, and nine feet of black top to the north of the center line. Meicher, likewise driving eastward, but at a speed of thirty-five to forty miles per hour, with headlights that enabled him to see only forty to fifty feet ahead, did not see the hayrack ahead of him until he was about twenty-five feet from it. Then he slammed on the brakes but could not stop, and, in order to avoid colliding with the hayrack, he pulled his automobile abruptly to the north, so that it went across the black top, and onto the loose gravel north thereof. That left but a foot within which to straighten out the car, and he tried to do so, but it started skidding and he could not get it to come back. Instead, it skidded along, out of control, until it rolled over in front of a westbound automobile, driven by Mrs. Hoesly. She had driven across the north shoulder in order to avoid a collision. Meicher saw the lights of her car as he turned north past the side of the hayrack, and her car was then one hundred feet to the east, on the north half of the tarred surface. As the place of the accident was at the base of a valley and the highway to the east and west thereof, over which the automobiles had approached each other, descended to that place for a considerable distance, Meicher could have observed the

lights of the Hoesly car when it was over two thousand feet away, and before he reached the base of the valley where his view of that car may have been obstructed by the wagon and rack. However, notwithstanding his failure in the latter respect, in view of the facts stated above, there was ample basis for Meicher's conclusion when he testified, to wit: ". . . If I had seen the lights of the Hoesly car earlier I could have slowed the car down sooner. If I had seen the hayrack sooner, I could have slowed down so that I would not have had to run out onto the gravel. . . . When I first saw the hayrack, I could not stop my car within the distance between the automobile and the hayrack. . . ." In as much as those facts fairly admit of that conclusion, and even the appellants seem to adopt it as correct in their brief, neither the trial court nor this court would be warranted in setting aside the jury's finding that Schroeder's negligence in not having a light or reflector signal on the hayrack was a proximate cause of the accident; and in holding, in lieu thereof, that, regardless of the absence of any light or reflector signal on the rack, and its proximity when it was first observable by Meicher, the latter's negligence, in the several respects found by the jury, constituted the only proximate cause of the accident. It does not necessarily follow that, because Meicher was negligent as to lookout, and did not see the Hoesly car until he turned out to pass the hayrack, that he would not have seen a light on the rear of the wagon. Had there been such a light on it, it would have been directly in the path of Meicher's vision, while looking straight ahead, as he testified. It cannot be said, as a matter of law, that if there had been a light on the wagon, in compliance with the law, he would not have seen it sooner than he saw the unlighted wagon; or that, if there had been such a light, it would not have enabled him to see the wagon, or at least the light sooner, so that even at the rate at which he was traveling, he

could have slowed down (his brakes were apparently efficient) without running out onto the gravel. The fact that he failed to observe sooner that there was a wagon ahead of him is not necessarily attributable solely to the inadequate condition of his lights. It is but reasonable to believe that, if there had been a lighted lantern on the rack, as the appellants claim, it could have been seen by Meicher without the aid of any headlights.

The decision in *Walker v. Kroger Grocery & Baking Co.* 214 Wis. 519, 252 N. W. 721, is not in point. In that case a fog was so dense that the headlights' rays would not penetrate more than forty or fifty feet. Because of that fog, a reflector signal would not have been visible more than forty or fifty feet ahead, and within that distance the plaintiffs were unable to stop at the speed at which they were driving. It was primarily because the impenetrable nature of that fog rendered such a reflector—even if one had been provided on the rear of defendant's truck—invisible to the plaintiffs until after they had approached so close to the rear of the truck as to be unable to stop in view of their speed, that we held that the absence of that reflector was not a proximate cause of the accident, and said in that connection (p. 525):

". . . By the time a reflective signal would have become illuminated and observable from Walker's car by virtue of the rays of his headlights, the collision would have been unavoidable. It would not have been rendered avoidable by the mere presence of an unilluminated reflective signal, but very likely would have occurred just the same because of the speed at which Walker was approaching, and the proximity of the vehicles before any reflective signal would have been observable from Walker's car under the circumstances."

However, neither that statement, nor our conclusion in that case as to the lack of necessary causal relation, is applicable to Schroeder's negligence in failing to equip the wagon with a light, which, if provided, would have been observable

by Meicher, under the atmospheric conditions on the night in question, for some distance, even if he had had no headlights at all.

Appellants' contention that a preponderance of the evidence shows that there was a lighted lantern on the wagon at the time, and that, therefore, the court should have changed the jury's finding that Schroeder was negligent in driving a wagon not equipped with a light or reflector cannot be sustained. That finding was amply warranted, not only by the testimony of Meicher, but also by the testimony of Mrs. Hoesly, a Mrs. Ehinger, who was a guest in Mrs. Hoesly's car, and A. C. Pope, a traffic officer, that there was no light on this wagon.

Appellants' contention that certain questions submitted to the jury for a special verdict were defective in form, and that the court also erred in several respects in its instructions to the jury, have all been duly considered, but cannot be sustained. We find no error in any of those respects, and no useful purpose will be served by a discussion thereof.

Neither did the court err in continuing with the trial against all of the defendants after Meicher, the South Park Street Garage, and the insurance carrier, upon paying $3,500 to the plaintiff, obtained, during the course of the trial, her covenant not to sue them. When that settlement was effected, the appellants, their counsel, and the court were immediately informed thereof. The appellants did not object to proceeding with the trial without informing the jury as to the settlement, or having Meicher, the South Park Street Garage, and the insurance carrier continue as defendants. As a practical matter, it was probably more to appellants' advantage, or at least more fair to them, to have the jury remain uninformed as to the settlement, than it would have been to have the jury informed, at that stage of the trial, that the action had been dismissed as to the defendants to whom plaintiff had given her covenant not to sue. Such a proceeding might have

caused the jury to assume that the accident was not considered attributable to the negligence of the discharged defendants. However, those who settled with the plaintiff by paying $3,500 were entitled to have the trial continue and to participate therein as parties defendant by virtue of their cross complaint against the appellants for contribution, in order to have an adjudication as to whether the appellants were liable to the plaintiff and, therefore, liable to those defendants who settled, if they had paid more than their share of the damages recovered under the judgment. See *Western Casualty & S. Co. v. Milwaukee G. C. Co.* 213 Wis. 302, 305, 251 N. W. 491; *Brown v. Haertel,* 210 Wis. 354, 244 N. W. 633, 246 N. W. 691.

On the other hand, if it was error, as appellants claim, to enter judgment in the first instance on June 26, 1935, for the assessed damages and costs, instead of deducting therefrom the $3,500 paid for the covenant not to sue, that error was remedied on the same day by entering a partial satisfaction of the judgment, to the extent of that $3,500 payment, and thereby reducing the balance due thereon to $4,000 and costs.

*By the Court.*—Judgment affirmed.