STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent, vs. CONTINENTAL CASUALTY COMPANY, Appellant.*

*June 4—July 3, 1953.*

* Motion for rehearing denied, with $25 costs, on September 11, 1953.

For the appellant there was a brief by *Dougherty, Arnold & Waters* and *Beyer & Sonnenberg,* all of Milwaukee, and oral argument by *Suel O. Arnold.*

For the respondent there was a brief by *Roberts, Roe, Boardman, Suhr & Bjork* of Madison, and oral argument by *Walter M. Bjork.*

CURRIE, J. This appeal presents the question of whether the release executed in this instance by the injured party to one of two joint tort-feasors and the latter's insurance carrier, precludes the insurance carrier of the second joint tort-feasor, who later had made a reasonable settlement with the injured person, from recovering contribution from the insurance carrier of the first joint tort-feasor.

Although the conception of the common law in most jurisdictions is to the contrary, the right to contribution between tort-feasors in Wisconsin, as in a few other states, has been recognized as a common-law right. *Ellis v. Chicago & N. W. R. Co.* (1918), 167 Wis. 392, 167 N. W. 1048. Moreover, it is a right based upon principles of equity, as appears from the following quotation from our recent decision in *Ainsworth v. Berg* (1948), 253 Wis. 438, 444, 34 N. W. (2d) 790, 35 N. W. (2d) 911:

"The rule of law has been stated to be that the right of contribution arises from the application of equitable rules, and that where one joint tort-feasor pays more than his just share he has an equitable right to proceed against the other joint tort-feasor for contribution. It is similar to the right of contribution which exists between cosureties."

The right of contribution arises from common liability and ripens into a cause of action upon payment by reason of a judgment, or pursuant to a reasonable settlement made with the injured. *Western Casualty & S. Co. v. Milwaukee G. C. Co.* (1933), 213 Wis. 302, 251 N. W. 491.

The pleadings in the instant case raise the issue of whether there was common liability on the part of Gateway and Johnson, which issue under the order of the trial court denying defendant's motion for summary judgment will have to be tried out. However, we will assume for the purposes of this decision that the joint negligence of Gateway's employee and Johnson caused the accident resulting in Mrs. Wilson's injuries so as to make Gateway and Johnson joint tort-feasors.

Mrs. Wilson, by her release, in consideration of the $15 paid to her by the defendant, absolutely released both Gateway and its insurance carrier (the defendant). The general rule at common law is that a release by an injured party of one of two tort-feasors released the other tort-feasor even though the release attempted to reserve a right of action against such other joint tort-feasor. 45 Am. Jur., Release, p. 701, sec. 37; Prosser, Joint Torts and Several Liability, 25 California Law Review, 413, 423; and *Bolton v. Ziegler* (1953), 111 Fed. Supp. 516, 523. However, Wisconsin, as early as 1880, in the case of *Ellis v. Esson,* 50 Wis. 138, 6 N. W. 518, held that a release of one joint tort-feasor with reservation of rights against the other joint tort-feasor was not a true release which operated to discharge from liability both joint tort-feasors, but was in the nature of a covenant

not to sue. In its decision in such case this court stated (p. 152):

". . . when it is apparent that it was not the intention of the parties to discharge or satisfy the debt or claim, but only to relieve one party from all liability to pay the same, the courts have usually avoided the difficulty by construing such contract as a simple contract not to sue the party discharged, and permit the action to proceed against all the parties notwithstanding the contract, leaving the discharged party to his action against the plaintiff for any damage he may sustain by reason of his being sued contrary to the conditions of such contract."

The result reached in *Ellis v. Esson, supra,* was followed by this court in its later decision in *Kropidlowski v. Pfister & Vogel Leather Co.* (1912), 149 Wis. 421, 135 N. W. 839, and in its decision in the latter case it was stated (p. 427):

"Neither do we think that what is at best manifestly intended to be a partial release should be held to be a complete one because the word 'release,' which has a technical meaning in the law, happens to be used. If a release implies full satisfaction, then it is apparent that there has not been full satisfaction, and consequently there has been no release in the technical sense, and that the intention of the parties will be best carried out by treating the agreement as a covenant not to sue."

On the basis of the decisions in *Ellis v. Esson, supra,* and *Kropidlowski v. Pfister & Vogel Leather Co., supra,* the learned trial court, in his able memorandum opinion, construed the release, which Mrs. Wilson executed to Gateway and the defendant insurance company in return for the $15 payment, to be in the nature of a covenant not to sue, and therefore such instrument did not bar plaintiff's right to contribution.

Counsel for the defendant point out that the trial court based his decision, that the release given by Mrs. Wilson to Gateway and defendant constituted a covenant not to sue,

upon the decisions in *Ellis v. Esson, supra,* and *Kropidlowski v. Pfister & Vogel Leather Co., supra,* which were decided before the Wisconsin legislature adopted the Uniform Joint Obligations Act in 1927, now constituting ch. 113, Stats. Upon referring to ch. 113, Stats., we find that only three sections, viz., secs. 113.03, 113.04, and 113.05, Stats., deal with the law of releases. These statutes provide as follows:

"113.03   *Recoveries credited, limitation.* The amount or value of any consideration received by the obligee from one or more of several obligors, or from one or more of joint, or of joint and several obligors, in whole or in partial satisfaction of their obligations, shall be credited to the extent of the amount received on the obligations of all co-obligors to whom the obligor or obligors giving the consideration did not stand in the relation of a surety.

"113.04   *Release of some, effect.* Subject to the provisions of section 113.03, the obligee's release or discharge of one or more of several obligors, or of one or more of joint, or of joint and several obligors shall not discharge co-obligors, against whom the obligee in writing and as part of the same transaction as the release or discharge, expressly reserves his rights; and in the absence of such reservation of such rights shall discharge co-obligors only to the extent provided in section 113.05.

"113.05   *Release of some; co-obligors protected.* (1) If an obligee releasing or discharging an obligor without express reservation of rights against a co-obligor, then knows or has reason to know that the obligor released or discharged did not pay so much of the claim as he was bound by his contract or relation with that co-obligor to pay, the obligee's claim against that co-obligor shall be satisfied to the amount which the obligee knew or had reason to know that the released or discharged obligor was bound to such co-obligor to pay.

"(2) If an obligee so releasing or discharging an obligor has not then such knowledge or reason to know, the obligee's claim against the co-obligor shall be satisfied to the extent of the lesser of two amounts, namely (1) the amount of the fractional share of the obligor released or discharged, or

(2) the amount that such obligor was bound by his contract or relation with the co-obligor to pay."

The provisions of sec. 113.04, Stats., rather than those of sec. 113.05, are applicable to the release the defendant secured from Mrs. Wilson for $15. While the term *"covenant not to sue"* is not employed in sec. 113.04, nevertheless, this section seems to accomplish nothing more than to put into statutory form the rule which this state had previously adopted by court decision in *Ellis v. Esson, supra.* In other words, a release of one joint tort-feasor reserving rights against the other joint tort-feasor (or joint tort-feasors) under sec. 113.04 is synonymous with covenants not to sue which have received wide use in this state in settling claims for personal injuries and property damage arising out of automobile accidents caused by the concurring negligence of two or more parties.

However, in spite of such wide use of covenants not to sue, this is the first case in which this court has been called upon to pass upon the question of whether a releasee under such a covenant may be called upon to respond in contribution upon the suit of another joint tort-feasor, or his insurance carrier.

We had the reverse of this problem before us in *Van Gilder v. Gugel* (1936), 220 Wis. 612, 265 N. W. 706, wherein it was held that the releasees under a covenant not to sue would be entitled to contribution against the nonsettling joint tort-feasors in the event it developed that such releasees had paid more than their equitable share (in that case one half) of the damages recovered by plaintiff against the nonsettling joint tort-feasors. It would seem to logically follow from our holding in *Van Gilder v. Gugel, supra,* that if a settling joint tort-feasor, under a covenant not to sue, paid less than his equitable share of the damages sustained by the injured person, the other joint tort-feasor, who thereafter as the result of a judgment in behalf of the injured person, or of a reason-

able settlement, was required to pay more than his equitable share of the damages, would be entitled to contribution against such first, settling, joint tort-feasor who had obtained the covenant not to sue.

The Minnesota supreme court in *Employers Mut. Casualty Co. v. Chicago, St. P., M. & O. R. Co.* (1951), 235 Minn. 304, 50 N. W. (2d) 689, has passed directly upon the question under consideration and held that a covenant not to sue is not a defense to an action for contribution. In its decision the court in that case stated (pp. 309, 310) :

"The question for our determination is whether a tort-feasor who has paid pursuant to a provident settlement and who has secured a release from the injured person of his cause of action may seek contribution from a tort-feasor jointly liable who has a defense to an action against him by the injured party. Specifically, as in the instant case, can such a joint tort-feasor seek contribution from a tort-feasor jointly liable who has bought a defense by paying the injured party a substantial amount of money for a covenant not to sue? . . .

"Contribution is based on the simple demand of justice, often expressed in the maxim that 'equality is equity.' *Van Brunt v. Gordon,* 53 Minn. 227, 230, 54 N. W. 1118. One who has paid more than his share is entitled to contribution from the other to reimburse him for the excess so paid, thus equalizing their common burden. As the Wisconsin court said in *Wait v. Pierce,* 191 Wis. 202, 226, 210 N. W. 822, 823, 48 A. L. R. 276:

" '. . . Whether the common obligation be imposed by contract or grows out of a tort, the thing that gives rise to the right of contribution is that one of the common obligors has discharged more than his fair equitable share of the common liability.'

"The fact that one tort-feasor has secured a defense, such as purchasing a covenant not to sue, to a claim by an injured party does not alter the fact that there has been an injury and loss resulting partially from the tortious act of that person. Justice requires that he pay his fair and honest share

of the underlying obligation. The later-acquired defense does not alter the basic equities of the situation."

Professor Arthur Larson, in an article entitled "A Problem in Contribution" appearing in 1940 Wisconsin Law Review, 467, considered the question of whether a covenant not to sue constituted a defense to an action for contribution and stated his conclusion as follows (p. 470) :

"The conclusion reached is that, although there are weighty arguments on both sides, there is better reason in Wisconsin for favoring the rule that a covenant not to sue one joint tort-feasor, given by the injured party, is not a good defense to an action for contribution brought by the other."

In a note entitled "Auto Accidents—Contribution and Covenants Not to Sue" in 1950 Wisconsin Law Review, 684, by Robert W. Smith, the author arrived at the same conclusion which Professor Larson had reached. We quote from such note as follows (p. 686) :

"In view of the above authorities it now seems unlikely that the Wisconsin court will allow the circumvention of a contribution action through the use of a covenant not to sue. Therefore, the contribution rights of *nonsettling* joint tort-feasors will be available to protect them from bearing the effects of unfair or unreasonable settlements by other joint tort-feasors."

Counsel for defendant advance the argument, that inasmuch as common liability is necessary among joint tort-feasors in order to permit one to have contribution against the other, the absolute release by Mrs. Wilson of the joint tort-feasor Gateway under the terms of the release, or covenant not to sue, which the defendant obtained from her, destroyed such common liability. However, our decision in *Ainsworth v. Berg, supra,* is a complete answer to such contention. In that case it was held that even though the injured

party in an automobile accident case failed to give the two-year notice required under sec. 330.19 (5), Stats., against one of two joint tort-feasors but instituted timely action against the other joint tort-feasor, nevertheless, the joint tort-feasor against whom the action was brought and against whom judgment was entered, might have contribution against the joint tort-feasor who had not received the statutory two-year notice. As of the time when the one joint tort-feasor sought contribution against the other, there was no common liability because of the failure of the injured person to have given the statutory two-year notice as to one of the two joint tort-feasors, but, nevertheless, this court held that contribution would lie. The reason advanced for so holding was that the equitable right to contribution arises in automobile cases in the joint misconduct of the negligent parties at the time of the accident and remains an inchoate right until such time as one of the joint tort-feasors pays more than his share of the total damages, at which time it ripens into a legal right.

In *De Brue v. Frank* (1933), 213 Wis. 280, 285, 251 N. W. 494, this court in discussing the nature of the right of contribution which one joint tort-feasor has against the other joint tort-feasor (or joint tort-feasors) declared:

"It may be said, however, that a right to be protected against an unfair exaction comes into being and becomes the property right or interest of a joint tort-feasor *the instant the combination of negligent acts results in injury to a third person.*" (Emphasis supplied.)

In other words, the common liability necessary to support a cause of action for contribution in automobile accident cases is determined as of the time the accident occurs, and not as of the time the cause of action for contribution is later asserted. The fact, that the existing common liability has later been extinguished as to one of the joint tort-feasors,

is immaterial in so far as effecting the right to have contribution from such joint tort-feasor is concerned.

Without citing any authorities to support such contention, counsel for defendant maintain that the indemnity clause in the release, which the defendant obtained from Mrs. Wilson, had the effect of reducing Mrs. Wilson's claim for damages in half and therefore the plaintiff, as insurance carrier for Johnson, in settling with Mrs. Wilson was liable to pay her only 50 per cent of her claim. If plaintiff's liability to Mrs. Wilson by reason of the indemnification agreement was limited to paying her but 50 per cent of her damages, it would necessarily follow that plaintiff would have no right of contribution in this action because its equitable share of the total damages would be such remaining 50 per cent thereof. The learned trial court in disposing of such contention stated:

"The answer to this contention would seem to be obvious and simple. The plaintiff in this action was not a party to that agreement, and therefore is not bound by it. The indemnifying agreement has no effect upon this action, because the parties who signed it are not parties to this action.

"The present controversy should not be confused with the situation which frequently arises where all of the alleged tort-feasors, as well as the claimant, are before the court and where in the interest of a practical disposition of the entire matter—usually with full consent of the parties—the court disposes of the right of contribution by entering judgment for one half of the amount of the verdict, in recognition of the ultimate effect of the covenant not to sue and the save-harmless agreement. That procedure is not available here because the covenanting parties are not before the court."

We are in full accord with the conclusion reached by the trial court, that the indemnification agreement between Mrs. Wilson and the defendant (to which neither Johnson nor the plaintiff were parties) had no effect upon plaintiff's right of contribution against the defendant, as the insurance carrier

for Gateway. If the defendant instead of grounding its release obtained from Mrs. Wilson upon the provisions of sec. 113.04, Stats., had based the same upon sec. 113.05 so as to have released Gateway and the defendant without reserving any claims against the other joint tort-feasor and his insurance carrier, such an instrument would have automatically constituted a settlement of 50 per cent of Mrs. Wilson's damages so that she could have recovered no more than the remaining half from Johnson and his insurance carrier (the plaintiff). The wording of sec. 113.05 is rather involved due to the fact that, in addition to covering joint tort liability, it also extends to situations of joint liability on contract in which the joint obligors by special agreement may have fixed their liability so as to vary the proportion of such liability among themselves from that which it would have been without such special agreement. Professor Williston is the author of the Uniform Joint Obligations Act embodied in ch. 113, Stats., and a clear analysis of the provisions of sec. 113.05, together with illustrations of how such section applies to different fact situations, is to be found in 2 Williston, Contracts (rev. ed.), pp. 986–988, sec. 336A.

In conclusion, the release which was obtained by the defendant from Mrs. Wilson, does not constitute a defense to plaintiff's action for contribution. However, by reason of the provisions of sec. 113.03, Stats., the $15 paid by the defendant is to be credited on Mrs. Wilson's damages. The plaintiff, when it settled in full with Mrs. Wilson, should have deducted the $15 from the $1,107 total damages due her, leaving a balance of $1,092 to be paid to her, which was the extent of plaintiff's liability. Plaintiff's right of contribution against the defendant therefore is limited to one half of $1,092, or $546, if plaintiff should prevail on the merits in the trial which must now take place as the result of the trial court having denied defendant's motion for summary judgment.

*By the Court.*—Order affirmed.