Frank AUGUSTIN, Plaintiff,

v.

**GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION,**
Ltd., Defendant.

Civ. A. No. 5673.

United States District Court
E. D. Wisconsin.

Nov. 24, 1959.

24

Richard McDermott, Ray T. McCann, Milwaukee, Wis., for plaintiff.

John A. Kluwin, Milwaukee, Wis., for defendant.

TEHAN, Chief Judge.

The above entitled matter was commenced by the plaintiff, Frank Augustin,

to recover $22,500, the difference between the amount of coverage under a policy of automobile liability insurance issued by the defendant, General Accident Fire & Life Assurance Corporation, Ltd. to the plaintiff, (the amount of coverage being $5,000 as the limits of bodily injury liability for one person) and the recovery made by Lois Augustin, wife of the plaintiff, in a State court action instituted in the Circuit Court of Milwaukee County by her against The Milwaukee Electric Railway & Transport Company and the plaintiff, Frank Augustin (the amount of such recovery being $27,500 against the said plaintiff alone). The Supreme Court of Wisconsin in Augustin v. Milwaukee Elec. Ry. & Transp. Co., 1951, 259 Wis. 625, 49 N.W.2d 730, upheld the jury verdict for $27,500 against the plaintiff, Frank Augustin, and ordered a reversal of the trial court's order granting motions for a new trial, and remanded with directions to enter judgment in accordance with the verdict of the jury. Plaintiff now asks us to allow him an overage recovery against the defendant insurer asserting that the actions and conduct of the defendant insurer clearly evinced bad faith.

A jury was empanelled at the start of the trial, but after some hours of testimony, the parties stipulated to try the case to the court without a jury, and thereupon the jury was dismissed. Upon the basis of the documentary and oral credible evidence introduced at the trial, this court now finds the following facts.

Sometime at approximately 11:00 o'clock on Sunday morning, June 30, 1946, the plaintiff herein, Frank Augustin, while driving his automobile, was involved in a collision with a streetcar operated by The Milwaukee Electric Railway and Transport Company, at the intersection of West Kilbourn Avenue and North Plankinton Avenue in the City of Milwaukee. Lois Augustin, plaintiff's wife, and their two children were passengers in the automobile.

At the time of the collision, Frank Augustin, maintained in full force and effect a policy of automobile liability insurance issued by the defendant, General Accident, which afforded coverage for bodily injury liability up to $5,000 for injuries to one person as a result of a single accident. Said policy also contained the following provisions relative to defense and control of suits brought against the insured, and notices of accident and injury required by the insurer:

"As respects such insurance as is afforded by the other terms of this policy

"(a) under coverages A and B the company shall

"1. defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company;

\*　　\*　　\*　　\*　　\*　　\*

"When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.

"If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

Police officers called to the scene of the accident, obtained statements from Frank Augustin and the operator of the streetcar, made an investigation at the scene and obtained the names of several witnesses.

It is undisputed that very prompt notice of the accident was given to General

Accident. Telephone notice was given by Frank Augustin to the insurer's agent, Hohberg, either on that Sunday or a day or so later. Hohberg admitted receiving that call from Frank Augustin and that it was his normal procedure to inquire if there were passengers in the car, and he would not deny that he received that information. He further admitted in answer to the court's inquiry that the company normally required nothing more than a notice that an accident had taken place, whereupon it was definitely their procedure to interview all passengers. He further admitted, based on his long experience in claims work, that he knew that very frequently accidents which appeared trivial at the time of receiving notice, later produced personal injury claims. Hohberg further stated that at that time he was handling a large volume of claims, perhaps forty or fifty a day, and in this instance, he did not order an investigation, but handled it as a property damage claim. Shortly after the immediate telephone notice, written notices to the company and to the State were executed. Such notices were unavailable at the trial because of the company's claim that the file must have been lost or destroyed.

It appears clear that the injuries to Lois Augustin were not thought to be severe, and that the discomfort in her back which she suffered that Sunday night and afterwards was thought to be traceable to giving birth in May, 1946 to her second child, a little over a month prior to the time of the accident. Her physical discomfort continued and she consulted the physician who had delivered her child. When he concluded that the physical discomfort in her back was not due to the pregnancy, he recommended that she go to an orthopedic specialist. She subsequently saw not only the recommended doctor, but a number of others, including Dr. Dramburg, who took complete x-rays of all of her teeth in order to eliminate this as a possible cause of her difficulties. Finally, Lois Augustin on June 26, 1947, consulted Dr. Chester Schneider, who concluded from his examination and the x-rays

taken by him that she was suffering from an unstable lower back, in that the fifth lumbar vertebra was hypermobile in relation to the sacrum, necessitating surgery on July 15, 1947, which consisted of a spinal graft of the lower lumbar and sacral bodies accomplished largely by tibial grafts and removal of the third lumbar spinous process. That thereafter a torso cylinder cast was applied, and she was discharged from the hospital on July 31, 1947. That the cast was opened on October 6, 1947, and one month thereafter was discarded and a medical corset was substituted. The services of Dr. Chester Schneider were concluded at the time he made a final examination of Lois Augustin on October 29, 1948. Dr. Schneider advised that in his opinion her injuries were due to the accident of June 30, 1946.

Mrs. Augustin was still in the cast when she retained Attorney Howard Bast to make claim against The Milwaukee Electric Railway & Transport Company, her husband, Frank Augustin, and his insurer. Her attorney, by telephone and by contemporaneous letter of October 18, 1947, recited to General Accident's agent, Mr. Hohberg, the events from the time of the accident to that date, and emphasized therein that earlier claim had not been made because Lois Augustin was not certain of the cause of her spinal difficulty until Dr. Schneider gave his opinion that it was caused by the accident of June 30, 1946.

By October 20, 1947, the Wisconsin Claim Department of General Accident was therefore aware of her claim, and had advised Attorney Bast through its agent, Hohberg, that it would proceed with its investigation upon receipt of copies of the medical report, hospital bills and special damages.

The Wisconsin Claim Department then sought the advice of its attorneys. General Accident's counsel, by letter dated November 14, 1947, recommended a disclaimer of liability because of late notice. The significant portion of this letter reads:

"A comparatively short time after this accident the assured reported

it to you but reported only minor property damage to his automobile which was within the amount deductible under your policy. It also appears that the same evening the assured's wife complained of severe pain in her back. Her injuries kept getting more and more severe and finally resulted in a serious operation. Although the statement given by the assured indicates some doubt in his mind as to the cause of his wife's condition until a diagnosis was made several months later, it is very apparent that he knew that her condition was caused by the accident many months before any claim was made or information thereof given to you.

"Your policy requires notice of an accident to be furnished within 20 days. Section 204.34 of the Statutes of Wisconsin provides:

" 'Failure to give such notice shall not bar liability under such policy of insurance, agreement of indemnity or bond, as required in subsection (1), if the insurer was not prejudiced or damaged by such failure, but the burden of proof to so show shall be upon the person claiming such liability.'

"It is quite apparent that if the insurance company had been informed that injuries were claimed by Mrs. Augustine, you would have made an investigation promptly, which would have included an attempt to locate witnesses, an examination of Mrs. Augustine by your physician, and other details included in ordinary investigations."

Neither Mr. Hohberg who asked for the opinion, nor the attorney who gave it, were able to state to this court what information was available to justify this opinion. It is admitted that no investigation was made by General Accident from immediately after the accident until October 18, 1947, when Lois Augustin made her claim. As to the subsequent period from October 18, 1947 to the date of the opinion, November 14, 1947, there has been no credible evidence that it undertook to investigate the claim. Mr. Hohberg did make vague references that he asked some agent who subsequently left for the Army to look into the matter, but he admits he is not too sure because somehow or other, the file has been lost or destroyed. It might even be questioned as to whether the counsel had the benefit of the insurance policy itself, inasmuch as his opinion states a notice requirement of 20 days, whereas the policy in suit under "Condition 1" provides that notice of accident "shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable."

Opinion of counsel notwithstanding, General Accident did not "promptly disclaim liability because of late notice." By letter dated November 17, 1947, Frank Augustin was advised that the claim of Lois Augustin was "being accepted under a full reservation of rights due to your late notice to this Corporation that any such alleged injuries were sustained, * * *". The letter closed with the advice that General Accident would make an investigation to determine whether its rights had been prejudiced and the assurance was given that he would be informed of the decision at the earliest opportunity.

However, he heard nothing further from his insurer until after February 2, 1948, when Lois Augustin commenced an action in the Milwaukee County Circuit Court against himself, his insurer, General Accident, and The Milwaukee Electric Railway & Transport Company.

In letters dated February 4, 1948, the defendant's Wisconsin Claim Department, by A. J. Hohberg, informed its attorneys to take over the defense of Lois Augustin's suit, and advised Frank Augustin that said law firm had been retained to defend him. The letter to Frank Augustin further advised:

" * * * It is possible that a judgment may exceed your policy limits. Under the circumstances, you or your personal counsel are at liberty to discuss this case with our

attorneys (or the undersigned). You may do this now if you wish and at time to time during the pendency of the case. This is not a request by us nor is it compulsory for you to do so, but it is a privilege you are entitled to exercise if you so desire."

This assurance of unconditional defense by the defendant had but a brief life. By another letter from the same Mr. Hohberg, dated February 9, 1948, Frank Augustin was informed that the insurer's offer of counsel was being withdrawn and that Augustin would have to retain his own counsel. The following excerpt was given as the reason for such action:

"* * * Our investigation definitely indicates that our position has been prejudiced by your failure to promptly notify us of this alleged accident and the alleged injury to your wife."

Because of its bearing on the good faith of General Accident, this court believes at the expense of some repetition, that findings should be made on the three reasons assigned by the insurer as the basis for its disclaimer of liability.

The first reason—failure to give prompt notice of the accident—is so completely untrue that the most charitable view of it is that it was included as the result of inadvertence. The undisputed evidence, including the admissions of Hohberg himself, conclusively show that notice of accident was given to General Accident on the date thereof, or at most, a day or two later. But if inadvertence this be, it was all too typical of the careless and shabby way this matter was handled. Nor is there any basis in fact for reason two—that prompt notice of the alleged injury to Lois Augustin was not given. There is no evidence whatsoever that anyone, including Frank Augustin, knew of the causal relationship of the accident of June 30, 1946 and the back injury, until Dr. Schneider gave his opinion to that effect a year later. All of the actions of both Lois Augustin and Frank Augustin are consistent with a belief that her pain and discomfort were attributable to the pregnancy or some non-traumatic cause. When her continued discomfort caused her to seek medical treatment, she went to the doctor who had attended her in her confinement, and during that call failed to advise him of the accident. Dr. Darling made a diagnosis that her pain and suffering were not associated with the pregnancy and sent her to an orthopedic specialist. Subsequently, in an effort to obtain relief she saw a number of other doctors, including a urologist, and a dentist, who x-rayed all of her teeth. The third reason—that their investigation disclosed that the company's position had been prejudiced—is also completely without support in fact. It is undisputed that no investigation whatsoever was ever made from the time of the accident until the receipt of the claim from Lois Augustin's attorney on or about October 18, 1947. When Hohberg received the three-page, single-spaced letter, he had a reasonably complete history of the case to date, including the names of eight doctors to whom she had gone for treatment. While Lois Augustin's attorney and the insured, Frank Augustin, were advised that there would be an investigation of the matter to determine whether or not it had been prejudiced, this court finds that no investigation was made either as to the negligence or damage aspects of the case. As a matter of fact, in the face of Dr. Schneider's report which was given them revealing a substantial and painful injury requiring a serious operation and protracted convalescence, it did not avail itself of its right to an examination by a specialist of its own choice, because counsel had complete reliance on the ability and integrity of Dr. Schneider.

After disclaiming liability and withdrawing the offer of defense, General Accident interposed an answer solely on its own behalf, raising therein the policy defense of lack of notice and prejudice thereunder. Sometime thereafter, Frank Augustin, who had made claim against The Milwaukee Electric Railway &

Transport Company, filed an action against it. No answer, however, was interposed on behalf of Frank Augustin in the action commenced by his wife.

During the pre-trial period in February, 1948, to October, 1950, conferences were held in an attempt to settle the case, some being only between two parties; others appear to have been before the conciliation judge, and were attended by all counsel. The record shows that on February 4, 1949, General Accident's counsel were furnished with copies of medical reports of Dr. Darling and Dr. Schneider. The Transport Company caused an examination to be made by its physician, Dr. Miller. But as stated before, counsel for General Accident had great confidence in Lois Augustin's surgeon, Dr. Schneider, and didn't think there was much reason for having another orthopedic surgeon examine her. He also admitted that he knew there had been a serious injury, and that Lois Augustin was asking for $35,000, an amount greatly in excess of the policy limits.

The negotiations before the conciliation court resulted in an offer of $7,250, the same to be shared equally by The Transport Company and General Accident. This offer was refused by Lois Augustin, and shortly thereafter she retained Cornelius Hanley as new counsel, and he was substituted in the case after an agreement was made with the original attorney, Bast, for compensation for his efforts. At or about this time, Attorney Terrence Hickey was substituted for Frank Augustin's original attorney, Meixner, on both Frank Augustin's affirmative claim against The Transport Company and on defense of Lois Augustin's action.

On the eve of the trial, the cases were in the following posture: The cases had been consolidated for trial. In the Lois Augustin case, The Transport Company had interposed an answer denying liability and filed a crosscomplaint against the co-defendants for contribution. General Accident had interposed an answer only on its own behalf on the basis of the policy defense. No answer or other pleading had been filed on behalf of Frank Augustin. Shortly before the opening of the trial, General Accident's attorney who had handled the case from the beginning, turned over the file to a partner junior to him because of his inability to try the case.

At the opening of the trial on October 25, 1950, General Accident's new counsel stated that he was withdrawing the policy defense, and that General Accident was undertaking the defense of its insured, Frank Augustin. It was admitted on the trial of this action by General Accident's counsel that no new fact or information had come to his attention to cause this sudden change of position. Nor was General Accident's counsel prepared with pleadings to reflect this substantially altered position. In fact, it was not until midway in the trial that counsel for The Transport Company remarked upon their absence. The judge thereupon ordered the pleadings to be prepared and filed, and they were so filed on the fifth and last day of the trial.

At the opening of the second day of trial, and before the taking of testimony, Lois Augustin's counsel offered orally in open court, on her behalf to release Frank Augustin and his insurer, General Accident, from all further claim for damages in connection with this accident, in consideration of the receipt of the policy limits of $5,000. Lois Augustin expressly preserved her right to continue the trial of the action against The Transport Company. Frank Augustin's attorney likewise demanded that the General Accident turn over its policy limits to Mrs. Augustin, because he believed it had not acted in good faith, and he feared a jury would bring in a verdict for damages against Frank Augustin in excess of the policy limits. This offer was not accepted by General Accident. A reading of the proceedings indicates that General Accident's counsel was not convinced that his client and the insured would be relieved of all liability where The Transport Company's claim for contribution was still in issue. He also expressed doubts that any such settlement

could be made without the consent of The Transport Company's counsel. The trial resumed after the court suggested that the oral offers be reduced to writing and filed. The written offer and demand apparently were reduced to writing during the noon recess, and were filed in open court at the opening of the afternoon session. The record discloses nothing but a perfunctory identification of the documents for the record by the counsel offering the document. No comment was offered by counsel for General Accident on the occasion.

The written demand interposed on behalf of Frank Augustin referred to the oral offer of Lois Augustin's attorney to release both Frank Augustin and his insurer from all liability, and demanded that the insurer, General Accident, pay over its policy limit of $5,000, and so hold him, the insured, harmless from a judgment in excess of the limits.

The formal written offer filed in behalf of Lois Augustin, was addressed to General Accident's attorneys, who at this time were also attorneys for Frank Augustin, but it provided only for the release of "the company" making no mention of the insured Frank Augustin.

On the record presented in this court, there is no alternative but to find that at the time General Accident abandoned its policy defense and assumed and took control of its insured's defense in the trial, it was totally unprepared to competently defend him in the action. It had no witnesses available, no statements of witnesses, no depositions of adversary witnesses, no medical witnesses available to temper or moderate the testimony of its adversary's expert. Even the pleadings were not in order until upon the judge's order they were filed near the end of the trial. The only witness available was its insured, Frank Augustin, who apparently learned only at the opening of court that counsel for General Accident was taking over his defense.

It must be further found that by reason of its failure to investigate and prepare, General Accident had no informed knowledge and understanding of the facts or the law upon which to have based an honest judgment to refuse a settlement within the policy limits.

As stated earlier, the trial continued and resulted, after appeal, in a judgment against Frank Augustin alone in the sum of $27,500 and costs, which was reduced to $22,500 after General Accident paid in its $5,000 on the coverage and costs.

This action was started within seven months after entry of the state court judgment.

The ultimate issue presented on the foregoing facts is whether the insured, Frank Augustin, is entitled to recover damages by reason of the failure of the defendant, General Accident, to effect a settlement within the policy limits, of the claim made by Lois Augustin. We believe this problem can best be approached by taking up and considering in order, these three questions: (1) What is the defendant-insurer's duty to the plaintiff-insured under relevant Wisconsin law? (2) Did the defendant-insurer breach its duty in any respect causing damage to the plaintiff-insured? and, (3) Did the defendant-insurer have the opportunity to save the plaintiff-insured harmless from the damage of a judgment in excess of the policy coverage?

What then, under Wisconsin law, is the extent and nature of the insurer's duty to its insured?

The insurance policy in this case contained the standard provision relating to defense and settlement of lawsuits. It reads:

"As respects such insurance as is afforded by the other terms of this policy (a) under coverages A and B the company shall 1. defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; *but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed ex-*

*pedient by the company; * * * "* (Emphasis ours.)

The above provision makes it clear that the insurer has the right to make necessary investigations, the right to negotiate with the claimant, and the right to settle any claim at least within the limits of the policy. Jurisdictions, including Wisconsin, have developed by case law corresponding duties. Note, 60 Yale L.J. 1037 (1951). This case law has taken different avenues in approaching the solution to the problem of the insurer's duty to the insured. Lewis, "Insurer's Liability to Insured for Judgments Exceeding Policy Limits," 22 Ins. Counsel J. 56, 57 (1955). Generally now the problem is approached as one of tort law. But on this general approach can be found two roads to follow: A minority of courts test the insurer's duty by the rule of ordinary care (or its antithesis, negligence), whereas the majority of the courts use the rule of good faith (or its antithesis, bad faith). Annotation, Duty of Liability Insurer to Settle or Compromise, 40 A.L.R.2d 168, 171 (1955); 3 Richards, Insurance, Sec. 422 (5th Ed. 1952); 8 Appleman, Insurance Law and Practice, Secs. 4712, 4713 (1942).

While there are a number of Wisconsin cases, as a matter of fact, a majority of them, adhering to the majority rule of bad faith, the Wisconsin Supreme Court has never departed from or modified the test of ordinary care applied under the particular circumstances of Hilker v. Western Automobile Ins. Co., 1931, 204 Wis. 1, 231 N.W. 257, 235 N.W. 413. The issue in the Hilker case, as here, was the adequacy of the investigation conducted by the insurance company. In holding that liability may be based on a finding of ordinary culpable negligence, the court said (204 Wis. at page 15, 235 N.W. at page 415):

"This requires the insurance company to make a diligent effort to ascertain the facts upon which only an intelligent and good-faith judgment may be predicated. If it exhausts the sources of information open to it to ascertain the facts, it has done all that is possible to secure the knowledge upon which a good-faith judgment may be exercised. But we do not go so far as to say that, in order to characterize its judgment as one of good faith it is necessary that it should absolutely exhaust all sources of information. We go only so far as to say that it should exercise reasonable diligence in this behalf, which means such diligence as the great majority of persons use in the same or similar circumstances. This is ordinary care. So it seems to us that the statement in the opinion which is criticized, to the effect that a good-faith decision on the part of the insurance company upon the question of settlement must be preceded by the exercise of that degree of care and diligence which a man of ordinary care and prudence would exercise in the investigation and adjustment of claims, states the duty devolving upon the insurer, just as we declare it to be."

Our view in this respect is supported by the interpretation of the Hilker case by the Court of Appeals for our Seventh Circuit:

"Thus, under the Wisconsin law, an insurance company is bound, in the good-faith performance of its contract, to exercise that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business, were he investigating and adjusting claims. * * * If the insurance company fails to meet this standard, it is guilty of negligence in the performance of its contract and becomes liable, upon that ground, to the assured for the excess over the policy limit, irrespective of any fraud or bad faith upon its part. * * *" Ballard v. Ocean Accident & Guarantee Co., 7 Cir., 1936, 86 F.2d 449, 453.

The defendant insurer, of course, contends for the use of the application of the "bad faith" rule, and in support of

its position, Berk v. Milwaukee Automobile Ins. Co., 1944, 245 Wis. 597, 15 N.W. 2d 834; Royal Transit, Inc. v. Central Surety & Ins. Corp., 7 Cir., 1948, 168 F.2d 345; and Lanferman v. Maryland Casualty Co., 1936, 222 Wis. 406, 267 N.W. 300, can be cited. It is true that these three cases involve the same issue we have here—the failure to make a provident settlement; that the courts therein applied the "bad faith" test and made no reference to the Hilker test of negligence. These cases, however, are very clearly distinguishable on the ground that the issue here before us and before the Wisconsin Supreme Court in the Hilker case,—that of the adequacy of the investigation—was not in issue. Surely, we cannot be asked to attach significance to the fact that these respective courts made no reference to the Hilker negligence rule in their opinions, where there was no issue calling for its invocation. What we do think significant, however, is that in these three cases the Wisconsin Supreme Court and the Court of Appeals for the Seventh Circuit, expressly or by implication pointed up the fact that there was no issue therein of sufficiency and adequacy of the investigation.

Thus in Berk v. Milwaukee Automobile Ins. Co., 1944, 245 Wis. 597, 604, 15 N.W. 2d 834, 837, appears the following:

"In the instant case no contention is made that the defendant did not make an adequate investigation of the facts."

In Royal Transit, Inc. v. Central Surety & Ins. Corp., 1948, 168 F.2d 345, 348, the Court of Appeals for the Seventh Circuit said:

"The defendant was not surprised at any of the testimony offered at the Zamecnik trial, either as to the cause or extent of his injuries. All of such facts were in its possession long prior to the trial; in fact, defendant emphasizes the thorough investigation which it made and the complete information which it possessed relative to the Zamecnik claim. * * *"

In the third case, Lanferman v. Maryland Casualty Co., 1936, 222 Wis. 406, 267 N.W. 300, where incidentally gross negligence on the part of the insured was found, reference is made to the fact that an investigation had been conducted; there clearly was no issue as to the adequacy of that investigation.

■ We are of the opinion, therefore, that the test applied in the Hilker case, is the proper and only test to apply here. In the words of that test, we must here determine whether the defendant's refusal to settle the claim of Lois Augustin was "preceded by the exercise of that degree of care and diligence which a man of ordinary care and prudence would exercise in the investigation and adjustment of claims."

■ Our second question—did the defendant insurer breach its duty in any respect, causing damage to the plaintiff insured—must be answered with an emphatic unequivocal yes. As a matter of fact, we are at a loss where to point out any significant respect wherein General Accident fairly acquitted itself of its duties. From the date of the prompt notification to it of the accident, to the days of the trial of this case, when it was unable to produce its file in the matter on the excuse that it had been lost or destroyed, the performance, or perhaps better said, non-performance, of General Accident, is an appalling saga of carelessness and bad faith.

The findings of fact heretofore set out in fair detail, makes it unnecessary, we believe, to repeat them at any length. Sufficient is it here to point out, that the plaintiff, Frank Augustin, has established by clear, satisfactory and convincing evidence (1) that the defendant, General Accident, had the right under its policy of insurance to make necessary investigation, to negotiate with the claimant and to settle any claim at least within the policy limits; (2) that it received immediate notice of the accident; (3) that despite the fact that the company knew that there were passengers in both the insured's car and the streetcar, it failed to follow its normal procedure and

interview and obtain statements from them; (4) that when claim was made against it approximately a year later, it made no investigation, although claimant's attorney presented a substantial history of the injury, including the names of eight doctors who had examined or treated the claimant; (5) that General Accident failed to provide its counsel with a reasonably complete set of facts on which to base an informed opinion as to its liability; (6) that General Accident's disclaimer of liability was based on unsupported premises; (7) that General Accident knew that the injuries to Mrs. Lois Augustin were most serious, and that a large verdict might be returned; (8) that it is a reasonable inference that General Accident recognized the lack of merit in its policy defense by its participation in the pre-trial settlement conferences on the merits; (9) that when counsel for General Accident was sent into trial and took over control of the lawsuit, he was unprepared to properly defend the interests of its insured, Frank Augustin, in that he had no witnesses, statements, adverse examinations, medical or police reports, nor was he prepared with the pleadings to set out the issues; (10) that General Accident had an opportunity to settle the case within the policy limits and thus hold its insured harmless; (11) that General Accident's decision to refuse the settlement was not an "honest and intelligent judgment" since by its own dereliction it did not have available the foundation of fact and law upon which alone there could be a "weighing of the probabilities in a fair and honest way."

This appears to be an appropriate point at which to discuss the character of the justification offered by General Accident of its conduct before and during the trial. In respect of its action prior to trial the answer is as simple as this: General Accident neither denies nor admits the existence of a duty upon it to make an investigation of the facts and the law; it neither contends it made an adequate investigation nor concedes that it did

not; it just ignores this whole proposition in its briefs and proposed findings.

Of course, General Accident does deny that it acted in bad faith in failing to effect a settlement within the policy limits. In urging the court to find its actions to be in good faith, it employs the following facts and argumentation which we believe is fairly paraphrased thus:

Although the jury (using a ten-twelve verdict) exculpated the motorman of the streetcar, two jurors dissented on such finding; the jurors were not all of one mind since there were five dissents in all; the plaintiff, Frank Augustin himself, maintained that the Transport Company was negligent and pressed for recovery on his own complaint; the learned trial judge on motions after verdict granted a new trial.

Such difference of opinion among reasonable men, including the judge, insured, and jurors, demonstrates, it is argued, that it was a case that could go either way—and if it be such a case, then the decision of General Accident's counsel to go to the jury was either an honest judgment on the facts and the law or no more than a mistake or error of judgment upon which liability cannot be predicated under Berk v. Milwaukee Automobile Ins. Co. (1944) 245 Wis. 597 [15 N.W.2d 834, 839].

It is truly an ironic twist that this contention based as it is on pure and unadulterated hindsight is argued to be supported by the Berk case. To us the teaching of the Berk and related cases is that where the insurer's attorney makes an honest judgment based upon a full investigation of the facts and the law, the insurer shall not be held liable where upon hindsight it can be demonstrated that such judgment was erroneous or was based on mistake or neglect not amounting to fraud.

Note how in the following pertinent extracts from the Berk case, the act of judgment, the good faith of which is in issue, is premised on the existence of an

adequate investigation of the facts and law:

"We know of many instances in which able counsel have appeared before the court and, *upon an agreed state of facts,* differed as to the law of the case. Courts, as well as attorneys, sometimes differ on the law applicable to a given state of facts. [Emphasis ours.]

\* \* \* \* \* \*

"On the undisputed facts can it be held that defendant's adjusters and attorneys acted in bad faith in not settling the Kuhle Case, where, *upon their full investigation of the facts and law* they concluded that it was a case of no liability? The contention of respondent that defendant did not rely on the advice of its counsel is contrary to the undisputed evidence. The defendant's general claims manager, investigators, and attorneys were men of recognized ability and wide experience in their fields. They had handled thousands of claims and hundreds of lawsuits for defendant company. Never, before the case at bar arose, had a claim been made against defendant for excess beyond a policy limit, and never before had a single charge of bad faith or lack of good faith been made against defendant. It was reasonable and natural that defendant should rely in the Kuhle Case on the judgment and advice of its attorney. No offer of compromise was made after the trial of the Kuhle Case in the circuit court. There is no evidence that any settlement could have been made, after the trial in the circuit court and prior to the commencement of the present action, for less than the full amount of the judgment. There is some evidence that the Kuhle Case could have been settled for either $750 or $1,500 before the trial in the circuit court. The fact that defendant declined such offers and contested the action, when it could have settled at either figure, appears to be persuasive evidence of the good faith of the de-

fendant." (Emphasis ours.) Berk v. Milwaukee Automobile Ins. Co., 1944, 245 Wis. 597, 608, 609, 15 N.W. 2d 834, 839.

We hold such a contention to be without foundation in Wisconsin Law and to be repugnant to simple justice.

Because Wisconsin's comparative negligence law, St.1957, § 331.045, is quite unique, it may be well to make an observation upon the suggested inconsistency of Frank Augustin in maintaining on the one hand that he was entitled to recover from the Transport Company and on the other that a demand was filed by his attorney to settle Lois Augustin's case because of the likelihood of a large verdict against him. We find no significant inconsistency in this position. Under Wisconsin's comparative negligence law, for example, had the facts been such that the jury found both drivers causally negligent, Augustin, 10%, and the Transport Company, 90%, and the guest, Lois Augustin, free of negligence, judgment would have been entered in favor of Augustin for 90% of his damage. However, in Lois Augustin's case, a judgment would be entered which would have the practical result of making Frank Augustin liable to pay one-half of the $27,500 judgment, a sum still considerably more than the coverage under his policy.

How the defendant insurer can seriously assert that it had no opportunity to settle Lois Augustin's claim within the limits of the policy is beyond all understanding in the light of the evidence in this case. Lois Augustin's counsel, on the second day of the trial and before the testimony opened, made the following offer in her behalf:

"The plaintiff here and now, therefore, offers to accept the amount of the policy limits of the Insurance Company and to provide *them* with an adequate document relieving *them* from future liability of claim for damages of any kind or nature insofar as the plaintiff, Lois Augustin, is concerned and to withdraw her present demand for damages against that Company and to continue, according to law, *only* against

the Transport Company, the co-defendant." (Emphasis ours.)

If there was any ambiguity as to just who was to be released it is overwhelmingly clear from the transcript of the colloquy between Lois Augustin's counsel and the court that the offer was to release both the insured, Frank Augustin and General Accident.

"[Lois Augustin's Counsel]. May I supplement my former statement? I said that the plaintiff would cause to be executed a proper document releasing the Insurance Co. from further liability. She likewise would cause to be executed such a document releasing the principal defendant and save him harmless and the Insurance Company harmless from all future liability.

"[The Court]. Do you mean you will settle the case for that amount?

"[Lois Augustin's Counsel]. Only as against Frank Augustin and his Insurance Company. I will enter into an agreement whereby they are discharged by us from further liability as far as they are concerned as parties defendant in this case, preserving to ourselves as plaintiff the right to continue this action against the co-defendant, The Milwaukee Transport Company.

"[The Court]. You are offering to settle and dismiss as to the husband in consideration of the payment of the policy limit?

"[Lois Augustin's Counsel]. As far as for the wife. However, that dismissal is not to be a dismissal as to both parties.

"[The Court]. But a dismissal as to Frank? That is, you are offering to dismiss the action of Lois Augustin against Frank Augustin upon the payment of the policy limit to you?

"[Lois Augustin's Counsel]. As against the Insurance Company and Frank and the release will be in such a form so as not to preclude the plaintiff continuing her suit against the co-defendant, The Transport Company.

\* \* \* \* \* \*

"[General Accident's Counsel]. This is all a complete surprise to me, Your Honor. It seems to me that there are several factors here that don't fit together on anything.

"[The Court]. I suppose all that is necessary for you to say is 'yes' or 'no'.

"[General Accident's Counsel]. No, sir; I don't think so, Your Honor, for this reason: Supposing that was all right, we will pay the policy limit and get a dismissal as against Frank Augustin and ourselves as defendants in this case. That would not accomplish the result that they are contending for because,—I am assuming and understand—in this case in the answer of the Transport Company, they ask for relief over against Frank Augustin in the event there is a judgment entered finding both of them responsible or liable— or finding both of them negligent. Suppose they find twenty thousand dollars damages; suppose we had paid them and were out of the case and suppose the jury finds both Mr. Augustin and the Transport Company negligent, I take it that the judgment of the Court would be that those damages would be assessed against both of them in proportion and the extent of the Transport Company's payment in excess of what it should have paid in turn would be a judgment over and against Mr. Augustin. And suppose—(interrupted)

"[Lois Augustin's Counsel]. At that point, the purported release we intend to give is a satisfaction of any such proposed judgment that might be had against Mr. Augustin insofar as they—as your Company is concerned.

"[General Accident's Counsel]. How can you do this without the consent of Mr. Muskat? [Transport Company counsel]

"[Lois Augustin's counsel]. No. He is a spectator in this particular action.

"[General Accident's Counsel]. Am I wrong, Mr. Muskat? Suppose twenty thousand dollars is assessed and assume that the Insurance Company is out of the picture and Mr. Augustin is still in the picture, you have Mr. Augustin with a liability of ten thousand dollars against him; so by our paying it up, does it relieve Mr. Augustin of any possible liability?

"[Lois Augustin's Counsel]. Of course it does."

It is eminently clear to this court that Lois Augustin's counsel offered to release both Frank Augustin and General Accident, and to execute such appropriate releases as would save them harmless from future claims of any sort. It is just as clear that General Accident's counsel understood that the release of both the insured and his client was offered, and it is further clear that Frank Augustin, through his counsel, demanded that General Accident pay the policy limit to protect him from a judgment in excess of the limits. The reason General Accident's counsel did not accept the offer appears to be that he had doubts as to whether any such compromise could be effected without the consent of The Transport Company, and a further doubt as to whether or not a release could be effected which would protect both his client and the insured on the contribution aspect of the case.

Defendant, General Accident, cites the case of State Farm Mut. Auto. Ins. Co. v. Continental Cas. Co., 1953, 264 Wis. 493, 59 N.W.2d 425, as authority for its position that it could not make an effective settlement at the time and place of the offer. Our reading of that case leads us to the opposite conclusion.

We think it necessary to recite only the barest facts of the State Farm Mutual case to give a background for the significant teachings of it. A Mrs. Wilson was injured while riding as a passenger in a Gateway Company truck, driven by her husband, which was involved in a collision with an automobile driven by Johnson. For the sum of $15, Mrs. Wilson executed a release, whose precise terms are not material, except in that it reserved to her the right to bring an action against the other driver, Johnson, and a second provision wherein Mrs. Wilson agreed to indemnify Gateway, and its insurance carrier, Continental Casualty Company, against liability for contribution. Mrs. Wilson thereafter made claim against Johnson and his insurance carrier, State Farm Mutual Automobile Insurance Company, and secured a settlement in the sum of $1,107, whereupon the insurance carrier, State Farm Mutual Automobile Insurance Company commenced an action to recover from Gateway's carrier, Continental Casualty Company, the sum of $546 being one-half of the $1,107, less $15. The court held that the $15 release did not constitute a defense to State Farm Mutual's action for contribution on the ground that State Farm was not present or a party to such agreement and was not bound by it.

In clear contrast, all of the parties were before the court in this case. Had General Accident accepted the offer, a proper release could have been executed which would have relieved it and its insured of all further claims, including that for contribution. The trial would then have proceeded and at its end, if the Transport Company were found negligent, the court would dispose of the contribution right by entering judgment for one-half of the amount of the verdict. Having been given the full of their claim for contribution, the Transport Company could not be heard to complain.

The Supreme Court cited with approval the following language from the opinion of the trial judge (264 Wis. at page 504, 59 N.W.2d at page 430):

" 'The present controversy should not be confused with the situation which frequently arises where all of the alleged tort-feasors, as well as the claimant, are before the court and where in the interest of a prac-

tical disposition of the entire matter—usually with the full consent of the parties—the court disposes of the right of contribution by entering judgment for one-half of the amount of the verdict, in recognition of the ultimate effect of the covenant not to sue and the save-harmless agreement. That procedure is not available here because the covenanting parties are not before the court.'"

The State Farm Mutual case goes farther and suggests the type of release that could be used to effectuate a complete release including the right to contribution:

"If the defendant instead of grounding its release obtained from Mrs. Wilson upon the provisions of sec. 113.04, Stats., had based the same upon sec. 113.05 so as to have released Gateway and the defendant without reserving any claims against the other joint tort-feasor and his insurance carrier, such an instrument would have automatically constituted a settlement of 50 per cent of Mrs. Wilson's damages so that she could have recovered no more than the remaining half from Johnson and his insurance carrier (the plaintiff)."

There remains now only a consideration of the second ground upon which General Accident bases its contention that it never had the opportunity to settle the claim. The evidence that it relies on is that part of the written offer of settlement submitted and filed in behalf of Lois Augustin, which we now set out:

"Now, Therefore, be advised that I, Cornelius P. Hanley, attorney for the plaintiff, Lois Augustin, and with her full consent and knowledge, do at this time and before the completion of this trial, offer to accept in her behalf the sum of Five Thousand Dollars ($5,000.00), (this being the total amount of liability under your policy) and to give to your company such written document so as to claim no further damage against your company and to 'save you harmless' from all further claim of whatever kind or description by virtue of this accident."

It is now pointed out by General Accident that while the above writing offered a release to itself there was no provision for a release of its insured, Frank Augustin. Hence, it is argued, Frank Augustin suffered no damage when this "restricted offer" was refused by the insurer.

In its briefs the argumentation on this point would lead one who had no knowledge of facts of this trial to conclude that the matter of securing a release for Frank Augustin was a subject of actual contention between parties negotiating a settlement; that when such release could not be obtained, General Accident refused to abandon its insured, and therefore turned down the offer.

That this is simply not true will be seen when the relevant facts which defendant insurer has ignored are supplied.

We have heretofore set forth the substance of the colloquy that took place before the court on the second morning of the trial and before any testimony had been taken. It was cited heretofore as proof of the existence of an opportunity to settle within the policy limits. It also stands as clear and convincing proof that that oral offer of settlement provided for a complete release not only of the insurer, General Accident, but of the insured, Frank Augustin. It stands further as convincing proof that General Accident's then counsel clearly understood that both his clients, General Accident and Frank Augustin were being offered a complete release, and so knowing, he refused the offer on grounds concerned solely with the matter of contribution.

The proceedings of that morning, consisting as they did of an offer made in open court on behalf of Lois Augustin to completely release General Accident and its insured, Frank Augustin, a demand on the part of Frank Augustin up-

on his insurer, General Accident, to accept the offer to the end that he might be held harmless, and the refusal of General Accident to accept the offer, spell out to this court a complete transaction. There was no request on the part of General Accident's counsel to hold the offer open until he could consult his client, or any suggestion whatever that there might be a change of position later on. The only thing remaining to be done was a compliance with the court's suggestion that the offer and demand be reduced to writing and filed. This was done upon the re-opening of court after the noon recess. It is clear from the transcript that the proceedings were perfunctory with each attorney identifying for the record the paper he was filing.

There is not one word of testimony that would suggest that General Accident's counsel then or thereafter even discovered the omission of Frank Augustin's name in the written offer during the course of the trial. Yet this court is now being asked in an action involving essentially the matter of good faith, to exonerate it from liability by a finding that it was justified in refusing a settlement offer for a reason that was not even known to it, much less assigned. Even today it does not forthrightly assert that it would have settled but for the lack of a release of Frank Augustin.

It is no grateful task to continue with a consideration of a proposition so devoid of merit. We are satisfied from all the surrounding facts and just plain sense, that the omission was a mere inadvertence in dictation or transcription that was not realized by any one during the course of the trial and not improbably, until present counsel began the preparation of the defense of this overage case. (Present counsel for General Accident was first brought into these proceedings in this court, and did not take part in the State court proceedings).

The time elements indicate that the document was prepared during the noon recess with all the pressures that beset a lawyer during the trial of a case. But more importantly any other conclusion than inadvertence, just does not make sense.

It is obvious that the proceedings that morning were more than settlement efforts; they were also calculated to be the basis of an overage suit in the event the offer was rejected as it was.

It militates against the sense and purpose sought to be effected, to believe that Lois Augustin's counsel with a record established of an offer and an unqualified refusal would nullify that record by narrowing and restricting that offer. Nor does it make sense to believe that any one could conceive that an insurer could be held liable for an overage amount for failure to settle within policy limits where a release is not provided for the insured, who after all is the person damaged and aggrieved. To hold that the omission was intentional, we would have to believe that Lois Augustin changed her affections for her husband over the noon-hour, and that her counsel was so insensitive to duty as a lawyer, that he would not bother to have the record reflect a change of position after his repeated assurances directly to the court that Frank Augustin was being offered a release. On the other hand, it is significant that there is nowhere urged even a suggestion of purpose or advantage to be gained by not releasing the insured, Frank Augustin, nor can we see any.

On the basis of the foregoing, we hold that the plaintiff has established clear and convincing proof of his claim against General Accident, to his damages, being the amount of the difference between the $27,500 judgment, and the $5,000 paid by General Accident, together with interest, costs and disbursements.

The plaintiff will prepare findings of fact and conclusions of law conforming to this opinion, together with a proposed form of judgment, which shall be submitted to the defendant for approval as to form.